CITY OF WACO, TEXAS, Appellant,

v.

Louis E. BITTLE, Appellee.

No. 10–03–00098–CV.

Court of Appeals of Texas, Waco.

March 16, 2005.

---

1. I agree that if there is to be a remand, the entire case, including the case against Landry, must be remanded.

Art Pertile, Christopher Taylor, Kevin W. Cole, Waco, for appellant.

R. John Cullar, Mills & Cullar, L.L.P., Waco, B. Craig Deats, P.C., Austin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

An independent hearing examiner determined that the City of Waco had improperly suspended Louis Bittle from his position as a firefighter and later ordered the City to restore to Bittle the compensation and benefits he lost as a result of the suspension. A dispute arose over the manner in which the City sought to restore Bittle's compensation and benefits, and Bittle filed suit. The trial court granted Bittle's motion for summary judgment, finding that the City had failed to comply with the hearing examiner's decision and with section 143.053(f) of the Local Government Code and that Bittle is entitled to mandamus relief directing the City to pay Bittle the compensation and benefits due him.

■ The city contends in three issues that: (1) a genuine issue of material fact exists on the question of whether the City failed to comply with the hearing examiner's decision and with section 143.053(f); (2) a genuine issue of material fact exists on the question of whether the attorney's fees awarded were reasonable and necessary; and (3) the trial court did not have jurisdiction to entertain Bittle's suit because (A) governmental immunity bars the suit and (B) Bittle failed to exhaust his administrative remedies.[1] We will reverse and remand.

## BACKGROUND

The City indefinitely suspended Bittle for failing a breath-alcohol test given with a promotional exam. At the time of suspension, Bittle had accrued the following hours of leave: 1268.5 sick, 216 vacation, and 48 holiday. The City treated the suspension as a termination and paid him $20,462.23, which was a "cash out" of the following hours of leave: 1080 sick, 216 vacation, and 48 holiday.

Bittle timely appealed the indefinite suspension to an independent, third-party hearing examiner.[2] Following a hearing, the hearing examiner issued his decision, which stated in relevant part:

Since the City has not met its burden of establishing that Louis Bittle was under the influence, indefinite suspension is not the appropriate remedy. Mr. Bittle is to be reinstated to the position he held August 31, 2001. He is entitled to a new promotional physical. Then, upon reinstatement on February 15, 2002, he will submit to a physical so the City's promotion policies can be complied with, and he can be, upon passing the physical, promoted to lieutenant.

1. The City raises this "third issue" in its reply brief. Because jurisdiction can be raised at any time, we will address this issue. *See Univ. of Tex.Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358–59 (Tex.2004).

2. A firefighter can appeal an indefinite suspension to an independent third-party hearing examiner instead of to the civil service commission. TEX. LOC. GOV'T CODE § 143.057(a)

(Vernon 1999). The hearing examiner's decision is final and binding on all parties, and the appealing firefighter automatically waives all rights to appeal to a district court except on the grounds that the examiner was without jurisdiction or exceeded his jurisdiction or that the order was procured by fraud, collusion, or other unlawful means. *Id.* § 143.057(c), (j) (Vernon 1999).

The arbitrator maintains jurisdiction to assist the parties.

Bittle was reinstated and returned to work. Subsequently he inquired of the City whether he would receive back pay. Because the hearing examiner's decision did not mention back pay, the City requested reconsideration/clarification of whether Bittle was entitled to same. The City argued that he was not because (1) the time he was off without pay is the appropriate discipline for failing the breath-alcohol test and for failing to mitigate his damages and (2) there is no evidence in the record upon which to base such an award. The hearing examiner issued the following decision:

Having found that the City failed to meet its burden of proof, we ordered Mr. Bittle to be reinstated to the position he held August 31, 2001. He is entitled to compensation for the actual time lost as a result of the suspension. He is entitled to the wages he would have earned had he not been improperly suspended. All his rights and benefits are restored. If there is no basis for disciplinary action, there is no basis to treat the period of time it took to reinstate Louis Bittle as time off without pay. He is returned to work with back pay, minus interim earnings.

Award

Mr. Louis Bittle is to be paid all wages and benefits due from September 5, 2001, to his reinstatement on February 15, 2002, minus interim earnings.[3]

Bittle then sent a written demand to the City to comply with section 143.053(f), which states in pertinent part:

If the suspended fire fighter or police officer is restored to the position or class of service from which the person was suspended, the fire fighter or police officer is entitled to:

(1) full compensation for the actual time lost as a result of the suspension at the rate of pay provided for the position or class of service from which the person was suspended; and

(2) restoration of or credit for any other benefits lost as a result of the suspension, including sick leave, vacation leave, and service credit in a retirement system.

TEX. LOC. GOV'T CODE ANN. § 143.053(f) (Vernon Supp.2004–2005).

When Bittle did not receive the back pay he demanded, he filed suit alleging:

(1) The decision of the hearing examiner is final and binding on all parties.

(2) Defendant has failed to comply with the final decision of the hearing examiner and Texas Local Government Code § 143.053(f).

(3) Plaintiff is entitled to mandamus relief requiring the City to (1) pay him "full compensation for the actual time lost as a result of the suspension," and (2) restore and give credit for the sick leave, vacation leave, and holiday leave lost as a result of the suspension, pursuant to Texas Local Government Code § 143.053(f).

The City asserted a plea to the jurisdiction in its original answer contending that Bittle failed to exhaust his administrative remedies. In an amended answer, the City raised the issue of governmental immunity and filed a countersuit seeking (1) a declaration that section 143.053(f) does not require the City to restore Bittle's lost compensation and benefits in the manner sought by Bittle, (2) a declaration that

---

**3.** The reconsideration/clarification decision did *not* state that "[t]he arbitrator maintains jurisdiction to assist the parties" as the original decision did. The statute is silent about the duration of the examiner's jurisdiction, and we express no opinion about it.

restoring the compensation and benefits in the manner sought would result in an unconstitutional gift of public funds in violation of article III, section 52(a) of the Texas Constitution, and (3) reasonable and necessary attorney's fees.

The summary judgment granted in favor of Bittle states in relevant part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECLARED that the January 28, 2002, decision of the hearing examiner is final and binding on all parties.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECLARED that Defendant has failed to comply with the final decision of the hearing examiner and Texas Local Government Code § 143.053(f).
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECLARED that Plaintiff is entitled to mandamus relief requiring the City to (1) pay him "full compensation for the actual time lost as a result of the suspension" (in the total sum of $19,914.56), and (2) restore and give credit to Plaintiff for sick leave, vacation leave, and holiday leave lost as a result of the suspension (263.5 hours of sick leave[4], 75 hours of vacation leave, and 48 hours of holiday leave), pursuant to Texas Local Government Code § 143.053(f), for which a writ of mandamus shall be issued by the Clerk of the Court to be served on Defendant.[5]

. . .

All relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable.

## JURISDICTION

■ The City contends in its first issue that the trial court did not have jurisdiction to entertain Bittle's suit because governmental[6] immunity bars the suit and Bittle failed to exhaust his administrative remedies. However, because Bittle's suit for declaratory relief does not seek to impose liability on the City and because Bittle exhausted all available administrative remedies, the City's immunity is not implicated, and the trial court had jurisdiction.

### Suit for Declaratory Judgment

■ The Uniform Declaratory Judgments Act authorizes a person who is "affected by a statute" to "have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). Thus,

> Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability. Therefore, certain declaratory-judgment actions against state officials

---

4.  188.5 sick leave hours not "cashed out" and 75 sick leave hours accrued during time of suspension.

5.  The Court also awarded Bittle reasonable and necessary attorney's fees in the amount of $14,600.00 for the prosecution of the suit in the trial court and an additional $10,000.00 in attorney's fees in the event of an appeal.

6.  The City characterizes its immunity as "sovereign" immunity. However, sovereign immunity is the immunity possessed by the State and its various agencies and divisions, while governmental immunity is the immunity possessed by political subdivisions of the State, including counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003).

do not implicate the sovereign-immunity doctrine.

*Tex. Nat. Resource Conservation Commn. v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002) (plurality) (citations omitted).

In contrast, declaratory-judgment suits against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State. That is because such suits attempt to control state action by imposing liability on the State. Consequently, such suits cannot be maintained without legislative permission. And, private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a *contract dispute,* as a declaratory-judgment claim.

*Id.* at 855–56 (citations omitted).

■ These same principles apply to declaratory judgment actions brought against municipalities. *See Tex. Mun. Power Agency v. Pub. Util. Commn.,* 100 S.W.3d 510, 515–17 (Tex.App.-Austin 2003, pet. denied);[7] *City of San Benito v. Ebarb,* 88 S.W.3d 711, 721–22 (Tex.App.-Corpus Christi 2002, pet. denied).

■ The City contends that, because Bittle's suit seeks restoration of compensation lost as a result of his suspension, the suit is one for money damages. Applying this characterization, the City posits that under the rule of *IT–Davy* the City's immunity from suit is not waived by the Uniform Declaratory Judgments Act. *See IT–Davy,* 74 S.W.3d at 855–56; *Ebarb,* 88 S.W.3d at 722–24. We disagree with the City's characterization of Bittle's suit.

■ When a jurisdictional challenge is raised regarding the allegations of a plaintiff's pleadings, "[w]e construe the pleadings liberally in favor of the plaintiff[ ] and look to the pleader['s] intent." *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). Here, Bittle requests in his second amended petition that the trial court make a declaration of his rights with respect to section 143.053(f) and the hearing examiner's order on the issues of whether: (1) the hearing examiner's order is final and binding; (2) the City has failed to comply with the order and with section 143.053(f); and (3) Bittle is entitled to mandamus relief requiring the City to fully compensate him for time lost as a result of the suspension and to restore benefits lost as a result of the suspension.

Liberally construing these allegations in Bittle's favor, we construe them to seek (1) declaratory relief regarding whether the City has complied with section 143.053(f) and (2) upon a finding of noncompliance, mandamus relief requiring the City to comply. *See Miranda,* 133 S.W.3d at 226; *City of Sherman v. Hudman,* 996 S.W.2d 904, 912 (Tex.App.-Dallas 1999, pet. granted, judgm't vacated w.r.m.); *cf. Ebarb,* 88 S.W.3d at 722–24 (suit seeking declaration that law enforcement officers were entitled to compensation under ordinance which had been superceded was suit for money judgment from which city was immune under *IT–Davy* ).

The City argues that *Ebarb* controls. We disagree. *Ebarb* is distinguishable because the plaintiffs in that case did not join a request for mandamus relief with their petition for declaratory relief. In addition, they "did not argue that they were not seeking money damages but instead stoutly asserted that sovereign immunity for municipalities was waived by the UDJA." *Ebarb,* 88 S.W.3d at 723.

---

**7.** The City of Bryan was also a defendant/appellee in this suit. *See Tex. Mun. Power Agency v. Pub. Util. Commn.,* 100 S.W.3d 510, 513 (Tex.App.-Austin 2003, pet. denied).

Here, Bittle does not make such a broad assertion. Rather, he contends that "a declaratory action, coupled with a petition for mandamus, was appropriate in order to compel the City to act within the requirements of the statute."

Accordingly, we conclude that immunity from suit does not pose a bar to Bittle's petition for declaratory relief because he seeks thereby to compel the City to comply with the requirements of section 143.053(f) rather than to impose liability on the City. *See IT–Davy,* 74 S.W.3d at 855–56; *Hudman,* 996 S.W.2d at 912.

## Suit for Mandamus Relief

Bittle also seeks a writ of mandamus compelling the City to comply with section 143.053(f) by paying "him 'full compensation for the actual time lost as a result of the suspension'" and restoring any benefits lost as a result of the suspension.

The City affirmatively recognizes in its reply brief that "[a] district court has authority to issue a writ of mandamus to compel a public official to perform a ministerial act." The authority of district courts to issues writs of mandamus against municipalities has been regularly upheld on this basis. *See e.g. Anderson v. City of Seven Points,* 806 S.W.2d 791, 793 (Tex. 1991); *Guthery v. Taylor,* 112 S.W.3d 715, 720 (Tex.App.-Houston [14th Dist.] 2003, no pet.); [8] *City of Corpus Christi v. Unitarian Church of Corpus Christi,* 436 S.W.2d 923, 927 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.); *see also* TEX. CONST. art. V, § 8 (describing extent of district court's jurisdiction); TEX. GOV'T CODE ANN. § 24.011 (Vernon 2004) (describing district court's jurisdiction to issue writs).

8. The City of Sugar Land was also a respondent/appellee in this case. *See Guthery v.*

## Exhaustion of Remedies

The City next contends that the trial court lacked jurisdiction because Bittle failed to exhaust his administrative remedies. Under the City's theory, Bittle should have filed another administrative complaint with the civil service commission raising the issue of the City's compliance with section 143.053(f) and with the hearing examiner's order. This contention requires us to determine whether chapter 143 of the Local Government Code vests the civil service commission with exclusive or primary jurisdiction to resolve disputes arising under section 143.053(f). *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 220–21 (Tex. 2002).

Under article V, section 8 of the Texas Constitution, trial courts are vested with general jurisdiction which extends to all cases except those in which "exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *Subaru of Am.,* 84 S.W.3d at 220 (quoting TEX. CONST. art. V, § 8). Conversely, administrative bodies have limited jurisdiction. *See id.* "[T]hey may exercise only those powers the law, in clear and express statutory language, confers upon them. Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Id.* (citations omitted); *accord In re Entergy Corp.,* 142 S.W.3d 316, 322 (Tex.2004) (orig.proceeding).

"An agency has exclusive jurisdiction 'when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'"

*Taylor,* 112 S.W.3d 715, 717 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

*Subaru of Am.*, 84 S.W.3d at 221 (quoting Andrew G. Humphrey, Student Author, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze*, 52 U. Chi. L.Rev. 1090, 1107 n. 73 (1985)); *accord Entergy Corp.*, 142 S.W.3d at 322.

The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when both have authority to make initial determinations in a dispute. Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.

*Subaru of Am.*, 84 S.W.3d at 221 (citations omitted).

■ The issue of whether an administrative agency has exclusive or primary jurisdiction involves statutory construction and is a question of law which an appellate court reviews *de novo. Id.* at 222. Accordingly, we address in turn whether the provisions of chapter 143 vest the civil service commission with exclusive or primary jurisdiction over the issues presented in Bittle's case.

■ Texas courts have historically found that chapter 143 (and its predeces-

sor article 1269m) expressly authorize a civil service commission to hear appeals from promotional pass-overs, disciplinary suspensions, and demotions. *See Cantu v. Perales*, 97 S.W.3d 861, 863 (Tex.App.-Corpus Christi 2003, no pet.); *Corbitt v. City of Temple*, 941 S.W.2d 354, 355 (Tex.App.-Austin 1997, writ denied); *see also Stauffer v. City of San Antonio*, 162 Tex. 13, 344 S.W.2d 158, 160 (1961). More precisely, chapter 143 [9] authorizes a commission to conduct hearings to determine:

(1) whether a department head's recommendation to demote a firefighter or police officer should be granted; TEX. LOC. GOV'T CODE ANN. § 143.054 (Vernon 1999); and

(2) whether a firefighter or police officer "indicted for a felony or officially charged with the commission of a Class A or B misdemeanor" should be suspended for civil service violations directly related to the allegations of the indictment or complaint; *Id.* § 143.056(c), (d) (Vernon 1999).

Conversely, a commission has "appellate jurisdiction" under chapter 143 to consider:

(1) a firefighter's or police officer's challenge to a promotional examination; *Id.* § 143.034 (Vernon 1999);

(2) an allegation of irregularities in an election to adopt an alternate promotional system in a police depart-

---

9. Our review of chapter 143 does not include subchapters G through J, because those subchapters apply only to municipalities with populations of 1.5 million or more (or, in the case of subchapter I, 460,000 or more). The 2000 federal census found the population of the City of Waco to be 113,726. *See* U.S. Census Bureau, *Census 2000 Demographic Profile Highlights for City of Waco, Tex.*, http://factfin der.census.gov/servlet/SAFF-Facts?_event=Search & geo _id= & ——geo-Context= & _street= & _county=waco &

_cityTown=waco & _state= 04000US48 & _zip= & _lang=en & _sse=on (accessed Feb. 17, 2005). Accordingly, we take judicial notice that the population of the City of Waco is less than 460,000. *See In re Rose*, 144 S.W.3d 661, 678 n. 12 (Tex.Rev.Trib.2004, affirmed); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Assn.*, 77 S.W.3d 487, 504 (Tex. App.-Texarkana 2002, pet. denied); *Tex. Dept. of Pub. Safety v. Ackerman*, 31 S.W.3d 672, 676 (Tex.App.-Waco 2000, pet. denied).

ment; *Id.* § 143.035(g) (Vernon 1999);

(3) the propriety of a disciplinary suspension; *Id.* § 143.053 (Vernon Supp.2004–2005); and

(4) whether to award back pay for a temporary suspension based on a firefighter or police officer having been "indicted for a felony or officially charged with the commission of a Class A or B misdemeanor," where the firefighter or police officer "is not found guilty of the indictment or complaint in a court of competent jurisdiction"; *Id.* § 143.056(e) (Vernon 1999).

Because of the nature of the limited jurisdiction possessed by administrative bodies, courts have found that a civil service commission does not have jurisdiction to address other issues. *See e.g. City of Austin v. Phipps,* 162 Tex. 112, 344 S.W.2d 673, 674–75 (1961) (commission not authorized to determine firefighter's right to injury leave of absence); *Stauffer,* 344 S.W.2d at 159–60 (commission not authorized to determine whether firefighter who had returned from military leave was entitled to reinstatement); *Cantu,* 97 S.W.3d at 863 (commission not authorized to determine effectiveness of firefighter's resignation); *Perez v. City of Laredo,* 21 S.W.3d 371, 373–74 (Tex.App.-San Antonio 2000, no pet.) (commission not authorized to determine promotion eligibility based on 2–year service requirement of section 143.031); *Corbitt,* 941 S.W.2d at 356–57 (commission not authorized to determine

propriety of temporary revocation of permission to engage in off-duty employment); *cf. Thomas v. Long,* 97 S.W.3d 300, 302–03 (Tex.App.-Houston [14th Dist.] 2003, pet. granted [10]) (sheriff's department civil service commission established under chapter 158 does not have exclusive jurisdiction to determine whether reinstated employee must comply with department testing procedures before returning to work); *City of Houston v. Jackson,* 42 S.W.3d 316, 321–23 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd w.o.j.) (firefighter need not pursue separate administrative grievance proceeding to enforce grievance examiner's order as a prerequisite to a suit to enforce the order).

Consistent with these authorities, the commission has exclusive jurisdiction only to conduct hearings or appeals regarding the six issues enumerated hereinabove. Stated another way, these six issues are the only ones for which chapter 143 evinces a legislative intent that "the regulatory process ... be the exclusive means of remedying the problem to which the regulation is addressed." *Entergy Corp.,* 142 S.W.3d at 322; *Subaru of Am.,* 84 S.W.3d at 221.

■ Here, Bittle's suit seeks to compel the City to comply with the hearing examiner's order and with section 143.053(f). Chapter 143 does not provide an enforcement mechanism for compliance with an order of the commission or a hearing examiner. *Cf. Jackson,* 42 S.W.3d at 321–23.

---

**10.** The Supreme Court granted review in *Thomas* on the following issues:

1. The court of appeals erred by holding that Sheriff Thomas could not appeal the interlocutory denial of his jurisdictional challenge under § 51.014(a)(8) simply because he raised it in a motion for summary judgment over the appeal in contravention of other appellate courts' clear precedents.

2. The court of appeals incorrectly held, in *dictum,* that the jurisdiction of a civil service commission was primary as opposed to exclusive.

*Thomas v. Long,* No. 03–0204, 47 Tex. Sup.Ct. J. 233, 234 (Tex. Jan. 16, 2004) (order granting petition for review).

Section 143.053(f) (hereinafter, "subsection (f)") provides that a suspended firefighter or police officer who is reinstated "is entitled to" the compensation and benefits lost as a result of the improper suspension. The City contends that, because the commission or hearing examiner has exclusive jurisdiction to hear the appeal of a firefighter's or police officer's suspension under section 143.053, it also has exclusive jurisdiction to award compensation and benefits under subsection (f). We disagree.

According to section 311.016(4) of the Code Construction Act, the phrase "is entitled to" "creates or recognizes a right." Tex. Gov't Code Ann. § 311.016(4) (Vernon 1998). Thus, the hearing examiner's determination that Bittle should be reinstated necessarily recognized Bittle's right to compensation and benefits under subsection (f). If the Legislature had intended for the commission or a hearing examiner to also determine whether a reinstated firefighter or police officer is entitled to compensation and benefits under subsection (f), or the amount of such compensation and benefits, it could have easily stated this intent in the statute. *See Miller v. Keyser,* 90 S.W.3d 712, 719 (Tex.2002); *cf.* Tex. Loc. Gov't Code Ann. § 143.056(e) ("If the department head temporarily suspends a fire fighter or police officer under this section and the fire fighter or police officer is not found guilty of the indictment or complaint in a court of competent jurisdiction, the fire fighter or police officer may appeal to the commission or to a hearing examiner for recovery of back pay. The commission or hearing examiner may award all or part of the back pay or reject the appeal.").

Rather, the sole issue to be decided in an appeal under section 143.053 is the propriety of a disciplinary suspension or the length of the suspension. Upon rein-

statement, the firefighter or police officer has a statutory right to the compensation and benefits lost as a result of the improper suspension. Thus, the commission does not have exclusive jurisdiction to determine whether a reinstated firefighter or police officer is entitled to compensation and benefits under subsection (f) or the amount of such compensation and benefits.

Because subsection (f) does not authorize the commission to determine these issues, the commission does not have primary jurisdiction either. *See Subaru of Am.,* 84 S.W.3d at 221 (primary jurisdiction must be determined when "courts and agencies … *both* have authority to make initial determinations in a dispute").

Therefore, if a municipality fails to restore the compensation and benefits required by subsection (f), a firefighter or police officer may seek relief in the courts. Accordingly, we conclude that Bittle did not need to seek further administrative relief before filing this suit. Thus, we overrule the City's third issue.

## COMPLIANCE WITH THE HEARING EXAMINER'S DECISION

■ The City contends in its first issue that a genuine issue of material fact exists on the question of whether it has failed to comply with subsection (f) (and the hearing examiner's order). Bittle argued in his summary judgment motion that the City's failure to pay him the amount of compensation due under subsection (f) conclusively established the City's non-compliance. The City responded that, after offsets are allowed for the benefits payment the City made to Bittle after he was suspended and for Bittle's interim earnings from other sources, Bittle actually owes the City almost $3,100.

The parties do not dispute that Bittle would have earned $19,914.56 had he not been suspended. The dispute centers on

whether an offset should be allowed for the City's $20,462.23 benefits payment or Bittle's accumulated leave hours should be reduced by the number of hours that payment represents. We believe that the City is entitled to offset the amount of compensation owed to Bittle because of the actual time lost as a result of the suspension with the prior benefits payment.

The purpose of subsection (f) is to restore a firefighter or police officer who has been improperly suspended to the position he would have occupied had the suspension not occurred. Thus, a firefighter or police officer who has been reinstated is entitled to: (1) "full compensation for the actual time lost as a result of the suspension"; and (2) "restoration of or credit for any other *benefits* lost as a result of the suspension." TEX. GOV'T LOC.CODE ANN. § 143.053(f) (emphasis added). We begin by addressing what restoration of lost benefits entails.

Bittle contends that he did not *lose* the leave hours for which the City paid him because the City voluntarily chose to convert those hours to cash. He suggests that there is no prohibition against the City taking this action, citing *Willis v. City of Lubbock*, 385 S.W.2d 617 (Tex.Civ.App.-Amarillo 1964, writ ref'd n.r.e.). In that case, a City of Lubbock policy provided that employees leaving the classified service should be paid for their accumulated vacation leave hours. The Amarillo court noted that the pertinent civil service statutes did not provide for this type of payment to an employee leaving the classified service and that the city's policy was one which the city "voluntarily adopted." *Id.* at 618 (citing Act of May 23, 1957, 55th Leg., R.S., ch. 391, § 7, 1957 Tex. Gen. Laws 1171, 1175-76 (repealed 1987)) (current version at TEX. LOC. GOV'T CODE ANN. § 143.046 (Vernon 1999)).

■ However, the Amarillo court also noted that the pertinent statutes do have express provisions regarding payment for accumulated sick leave hours. *Id.* (citing Act of May 23, 1957, 55th Leg., R.S., ch. 391, § 6, 1957 Tex. Gen. Laws 1171, 1175 (repealed 1987) (current version at TEX. LOC. GOV'T CODE ANN. § 143.045 (Vernon 1999)). Section 143.045 (like its predecessor) requires a lump-sum payment for a certain portion of accumulated sick leave hours when a person leaves the classified service. *See* TEX. LOC. GOV'T CODE ANN. § 143.045(c); Act of May 23, 1957, 55th Leg., R.S., ch. 391, § 6, 1957 Tex. Gen. Laws at 1175 (repealed 1987). Section 143.045 does not permit a municipality to voluntarily cash out sick leave hours before a person leaves the classified service. *See Geron v. City of Sweetwater*, 368 S.W.2d 151, 154 (Tex.Civ.App.-Eastland 1963), *rev'd on other grounds*, 380 S.W.2d 550 (Tex.1964)).

True, this prohibition applies to only accumulated sick leave hours and not to accumulated vacation or holiday leave hours. However, to ensure a uniform and predictable application of subsection (f)(2), all accumulated leave hours should be treated the same.

Therefore, to comply with subsection (f)(2), the City must restore to Bittle the sick, vacation, and holiday leave hours which he had accumulated when he was suspended and credit him for those leave hours he would have accumulated during the period of his suspension. *See* TEX. LOC. GOV'T CODE ANN. § 143.053(f)(2).

Conversely, to comply with subsection (f)(1), the City must pay Bittle $19,914.56 as compensation for the actual time lost as a result of the suspension. *Id.* § 143.053(f)(1). However, because the City has already paid Bittle $20,462.23 for accumulated leave hours which must be restored, the City is entitled to offset the

sum paid against the sum owed. *See Geron*, 368 S.W.2d at 154.

Because the City has paid Bittle more than he is owed for lost compensation, Bittle failed to conclusively establish the City's non-compliance with subsection (f) (and the hearing examiner's order). Accordingly, we sustain the City's first issue.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice concurring.

In the past we have had so few opinions withdrawn that no particular problems were created if the opinions were withdrawn by an order separate from the new opinions being issued. The problem is that over the past year we have withdrawn numerous opinions, with and without motions for rehearing, and when on motion for rehearing, with and without requesting responses. Issuing multiple opinions in the same appeal creates confusion. A person can hold in their hands two opinions from this Court, both certified by the clerk as authentic, which are not the same. Our past practice has been that the latter normally does not reference the existence of the earlier opinion that is being withdrawn.

Our past practice did not present a problem when the issuance of another opinion in the same case was rarely done. At least the problem was manageable. But due to the greatly increased frequency of the majority issuing multiple opinions, I thought it was an appropriate time to adopt the procedure utilized by the Texas Supreme Court; to include the order, and explanation if needed, withdrawing the prior opinion as the first paragraph of the new opinion. *See e.g., Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 381 (Tex.2000).

This is a simple procedure for the convenience of anyone reading the opinions to understand, and easily determine which opinion is the Court's final opinion. This process also allows a researcher, interested in the ultimate disposition, to easily track backwards, if necessary, to see the development of the final opinion. Because the majority refuses to provide that information in its opinion, I do so in this concurring opinion.

### PRIOR HISTORY OF THIS APPEAL

Appellee's Motion for rehearing is granted. The Court's opinion vacating the trial court's judgment and dismissing the case for want of jurisdiction, and Chief Justice Gray's dissenting opinion, all dated November 10, 2004, are withdrawn and the Court's opinion, Chief Justice Gray's concurring opinion, and the judgment of this date are substituted therefore.

### CONCLUSION

With these comments regarding the history of this appeal, I concur in the Court's new opinion.