Delarenta Lamar RIDGE, Appellant

v.

The STATE of Texas, Appellee.

Nos. 10–05–00277–CR, 10–05–00282–CR.

Court of Appeals of Texas,
Waco.

Aug. 30, 2006.

Dawn A. Moore, Boswell & Moore, P.C., Denton, for Appellant/Relator.

Bruce Isaaks, Denton County Criminal District Attys., Denton, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Delarenta Lamar Ridge of two charges of aggravated robbery. The jury assessed his punishment at twenty years' imprisonment for one charge and forty-five years' imprisonment for the other. Ridge contends in four points that: (1) the court erred by failing to appoint a licensed interpreter for the testimony of one of the complainants; (2) the court's failure to do so violated his right of confrontation under the Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution (two points); and (3) he was denied the right to counsel during the 30-day period following imposition of sentence. We will affirm.

### Background

The State charged Ridge in separate indictments with the aggravated robberies of Abel Arriaga and Carlos Sosa. According to the testimony, Arriaga and Sosa were seated in a four-door pickup truck in a parking lot when Ridge and Dunte Daniels walked "past the truck a little bit." Arriaga testified that Ridge then came back and knocked on the front passenger's window where Arriaga was seated. Arriaga thought Ridge was going to ask a question, so he lowered the window about halfway. Ridge then pointed a black handgun at Arriaga and demanded his wallet. Arriaga told Ridge that he did not have a wallet. Ridge then pulled the trigger three times, but the handgun did not fire. Ridge pointed the handgun at the ground and tried to fire it. He finally succeeded. He then began to open Arriaga's door, pointing the handgun at Arriaga. Because the gunshot caused people to emerge from nearby apartments, Ridge and Daniels fled on foot to a friend's apartment.

Arriaga testified that Ridge is taller than Daniels.[1] He unequivocally identified Ridge as the person who threatened him with the handgun. He did not notice Daniels again until they fled the area.

Sosa was sitting in the right rear passenger's seat of the truck.[2] He testified that he saw Ridge and Daniels on that date and that the taller of them threatened Arriaga with a handgun. However, he could not say whether Ridge or Daniels was the taller of the two. Thus, he could not identify Ridge in court as the person who threatened Arriaga. Sosa testified that the shorter of the two men was standing near his door. After the taller man fired the handgun at the ground then threatened Arriaga again, Sosa opened his door, apparently in an attempt to flee. At that point, the shorter man stuck something against Sosa's back. Sosa could not say for certain that the man held a gun to his back, but Sosa thought it was a gun because it felt round and he "felt the iron" against his back. Sosa froze until the attackers fled.

Officers were directed to the apartment where Ridge and Daniels hid. They found them inside. After receiving the consent of the apartment owner, the officers searched the apartment and found a black handgun under a sofa cushion on the side where the owner testified Ridge had been sitting. Arriaga and Sosa viewed Ridge and Daniels that night and identified them as the robbers.

The police were unable to find any identifiable fingerprints on the handgun or the two shell casings taken from it. Arriaga testified that the handgun "looks like" the weapon Ridge threatened him with. Sosa told the police in a written statement given on the night of the robbery that Arriaga was threatened with a white handgun.[3]

Ridge signed a written confession the next day, admitting that he was involved in the robbery. However, Ridge insisted in his confession that Daniels held the handgun and demanded Arriaga's wallet.

## Licensed Interpreter

Ridge contends in his first point that the court erred by failing to appoint a licensed interpreter for Sosa's testimony.

The State responds that (1) Ridge failed to preserve this point for appellate review by failing to object; (2) no error is shown because the record is silent as to the interpreter's licensure status; (3) section 57.002 of the Government Code, which provides for the appointment of licensed interpreters in civil and criminal proceedings, does not apply unless a motion is filed for the appointment of an interpreter; and (4) assuming the court erroneously failed to appoint a licensed interpreter, Ridge was not harmed.

Article 38.30 of the Code of Criminal Procedure provides for the appointment of interpreters in criminal proceedings. The version of this statute applicable to Ridge's case provides in pertinent part:

> When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language,

---

1. State's Exhibit Nos. 7 & 8 are photographs of Ridge and Daniels. The backgrounds of these photographs have markings indicating that Ridge is slightly more than 70 inches tall, while Daniels is only 60 inches tall.

2. Sosa testified through an interpreter. Although the record is unclear, it appears that the prosecutor arranged for this interpreter to appear and assist with Sosa's testimony.

3. Sosa's statement was taken by a Spanish-speaking officer and translated into English.

an interpreter must be sworn to interpret for him. Any person may be subpoenaed, attached or recognized in any criminal action or proceeding, to appear before the proper judge or court to act as interpreter therein, under the same rules and penalties as are provided for witnesses. In the event that the only available interpreter is not considered to possess adequate interpreting skills for the particular situation or the interpreter is not familiar with use of slang, the person charged or witness may be permitted by the court to nominate another person to act as intermediary between himself and the appointed interpreter during the proceedings.

Act of May 21, 1991, 72d Leg., R.S., ch. 700, § 1, 1991 Tex. Gen. Laws 2505, 2505 (amended 2005) (current version at TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (Vernon Supp.2006)) (hereinafter, "TEX.CODE CRIM. PROC. ANN. art. 38.30(a)").[4]

Section 57.002 of the Government Code applies to the appointment of interpreters in civil and criminal proceedings. Section 57.002 provides in pertinent part:

(a) A court shall appoint a certified court interpreter or a licensed court interpreter if a motion for the appointment of an interpreter is filed by a party or requested by a witness in a civil or criminal proceeding in the court.

(b) A court may, on its own motion, appoint a certified court interpreter or a licensed court interpreter.

TEX. GOV'T CODE ANN. § 57.002(a), (b) (Vernon Supp.2006).[5]

The Court of Criminal Appeals has held that a defendant's right to an interpreter under article 38.30 must be implemented unless expressly waived if the trial judge is aware that the defendant has difficulty understanding the English language. *Garcia v. State*, 149 S.W.3d 135, 144–45 (Tex.Crim.App.2004). Because article 38.30 applies not only to defendants but also to witnesses who do not understand the English language, the First Court of Appeals has likewise concluded that the appointment of an interpreter for a witness must be implemented unless expressly waived if the trial judge is aware that the witness has difficulty understanding the English language. *Miller v. State*, 177 S.W.3d 1, 6 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

■■■ The correctness of the State's preservation argument rests on whether the right to an interpreter under article 38.30 necessarily includes the right to a licensed[6] interpreter under section 57.002.

---

4. The primary aim of the 2005 amendments to article 38.30 was to add subsection (a–1) governing "qualified telephone interpreters." *See* Act of May 26, 2005, 79th Leg., R.S., ch. 956, § 1, 2005 Tex. Gen. Laws 3225, 3225–26. The remaining amendments were primarily non-substantive. For example, subsection (a) was amended to remove gender-specific language. *Id.*

5. The version of section 57.002(c) applicable at the time of Ridge's trial applied to any county "with a population of less than 50,-000." *See* Act of May 28, 2001, 77th Leg., R.S., ch. 1139, § 1, 2001 Tex. Gen. Laws 2537, 2538 (amended 2005) (current version at TEX. GOV'T CODE ANN. § 57.002(c) (Vernon Supp.2006)). Subsection (c) permits the appointment of interpreters who are not licensed under certain circumstances. *Id.* The 2000 census found Denton County's population to be 432,976. *See* STATE & COUNTY QUICKFACTS, U.S. CENSUS BUREAU, *http://quickfacts.census.gov/qfd/states/48/48121.html* (last visited Aug. 24, 2006). Accordingly, we take judicial notice that the population of Denton County was more than 50,000 when Ridge committed these offenses and at the time of his trial. *See City of Waco v. Bittle*, 167 S.W.3d 20, 28 n. 9 (Tex.App.-Waco 2005, pet. denied). Thus, subsection (c) does not apply.

6. Section 57.002 refers to both "certified" and "licensed" interpreters. *See* TEX. GOV'T CODE ANN. § 57.002(a) (Vernon Supp.2006).

Aside from a reference to the general preservation rule, the State cites only one case as direct support for its preservation argument. *See* TEX.R.APP. P. 33.1(a); *Garcia v. State*, 887 S.W.2d 862 (Tex.Crim. App.1994), *overruled in part on other grounds by Hammock v. State*, 46 S.W.3d 889, 893 (Tex.Crim.App.2001).[7] *Garcia II*[8] stands for the proposition that an objection to the accuracy of an interpretation is insufficient to constitute an objection to the competence or qualifications of the interpreter.[9] *See Garcia II*, 887 S.W.2d at 874–75. This is a correct statement of the law, but it does not answer the question presented, namely, whether an objection is even required.

Ridge's failure to object will not defeat his claim if section 57.002 requires a trial court to appoint a licensed interpreter whenever [10] it appoints an interpreter under article 38.30. The Dallas Court of Appeals has held in an unpublished opinion that a trial court is not required to appoint a licensed interpreter under section 57.002 unless a party files a motion for the appointment of an interpreter. *See Hernandez v. State*, No. 05–03–00107–CR, 2003 Tex.App. LEXIS 7322, at *14–15 (Tex.

App.-Dallas Aug. 27, 2003, no pet.) (not designated for publication).

The court reached this conclusion from the language of section 57.002. Subsection (a) states in pertinent part that a "court *shall* appoint" a licensed interpreter "*if a motion for the appointment of an interpreter is filed by a party or requested by a witness.*" TEX. GOV' T CODE ANN. § 57.002(a) (emphases added). Conversely, subsection (b) provides in pertinent part that a trial court "*may,* on its own motion, appoint" a licensed interpreter. *Id.* § 57.002(b) (emphasis added). Because the defendant in *Hernandez* did not file a motion for an interpreter, the court concluded that section 57.002 did not apply. *See Hernandez*, at *5, 2003 Tex.App. LEXIS 7322, at *15.

The El Paso Court of Appeals has concluded that, notwithstanding the language of section 57.002, a court-appointed "interpreter is not required to be an 'official' or 'certified' interpreter under the Code, but only to have sufficient skill in translating and to be familiar with the use of slang." *Menjivar v. State*, No. 08–02–00143–CR, 2003 WL 361272 at *1, 2003 Tex.App.

" 'Certified court interpreter' means an individual who is a qualified interpreter as defined in Article 38.31, Code of Criminal Procedure, or Section 21.003, Civil Practice and Remedies Code, or certified under Subchapter B by the Department of Assistive and Rehabilitative Services to interpret court proceedings for a hearing-impaired individual." *Id.* § 57.001(1) (Vernon Supp.2006). " 'Licensed court interpreter' means an individual licensed under Subchapter C by the Texas Commission of Licensing and Regulation to interpret court proceedings for an individual who can hear but who does not comprehend English or communicate in English." *Id.* § 57.001(5) (Vernon Supp.2006). Because Ridge's point concerns the appointment of a licensed interpreter, we refer hereinafter to only licensed interpreters unless otherwise indicated.

7. In *Hammock*, the Court of Criminal Appeals "disavow[ed] any language in *Garcia* that *requires* an objection to the admission of evidence before a limiting instruction can be requested." *Hammock v. State*, 46 S.W.3d 889, 893 (Tex.Crim.App.2001).

8. Because this appeal involves two *Garcia* decisions from the Court of Criminal Appeals, we refer to the 2004 decision (149 S.W.3d 135) as *"Garcia I"* and the 1994 decision (887 S.W.2d 862) as *"Garcia II."*

9. Ridge did object to the accuracy of a portion of the interpretation.

10. We note again that section 57.002(c) excuses a court in a county with a population of less than 50,000 from appointing a licensed interpreter under certain circumstances.

LEXIS 1553, at *2–3 (Tex.App.-El Paso Feb.20, 2003, no pet.) (not designated for publication) (citing Tex.Code Crim. Proc. Ann. art. 38.30(a); Tex. Gov't Code Ann. §§ 57.002, 57.021 (Vernon Supp.2006); *Mendiola v. State*, 924 S.W.2d 157, 161 (Tex.App.-Corpus Christi 1995, pet. ref'd, untimely filed)). Apparently, the El Paso Court concluded that the general interpreter requirements found in article 38.30(a) control in criminal proceedings over the more specific requirements of section 57.002.

Other courts have held, consistent with caselaw existing before the enactment of section 57.002 and before the Court of Criminal Appeals' decision in *Garcia I*, that questions regarding the competency or qualifications of an interpreter must be raised by trial objection or they are forfeited. *See, e.g., Mendoza v. State*, No. 13–03–755–CR, 2005 WL 2476211, at *7, 2005 Tex.App. LEXIS 8247, at *18 (Tex.App.-Corpus Christi Oct. 6, 2005, no pet.) (not designated for publication) (citing *Montoya v. State*, 811 S.W.2d 671, 673 (Tex.App.-Corpus Christi 1991, no pet.)); *Escamilla v. State*, No. 08–03–00193–CR, 2005 WL 1303303, at *7, 2005 Tex.App. LEXIS 4193, at *19 (Tex.App.-El Paso May 31, 2005, no pet.) (citing *Montoya*, 811 S.W.2d at 673).

Contrary to the decisions of the Dallas and El Paso Courts in *Hernandez* and *Menjivar*, the Attorney General has construed section 57.002 to require the appointment of a licensed interpreter whenever a court appoints an interpreter under article 38.30. *See* Op. Tex. Att'y Gen. No. JC–0584 (2002). The Attorney General's opinion provides a thorough examination of these two statutes and others which relate to this issue. The following excerpts from the Attorney General's opinion set forth the conclusions of that office regarding the appropriate construction of section 57.002.

We construe section 57.002(a) to impose on a court the mandatory duty to appoint a *certified* or *licensed* interpreter when the court appoints an interpreter.

*Id.* at 7.

When a court appoints a spoken-language interpreter in a criminal case, we conclude that chapter 57 establishes the requisite interpreter qualifications. Therefore, the interpreter must be licensed under chapter 57 unless the section 57.002(c) exception applies.

*Id.* at 11.

While chapter 57 does not expressly state that spoken-language interpreters appointed under article 38.30 must be licensed interpreters, we construe chapter 57 to govern the qualifications of interpreters appointed under article 38.30 because the legislature intended chapter 57's licensing requirements to apply in all civil and criminal proceedings.

*Id.*

We agree with the Attorney General's interpretation of the statute. It would be an absurd result to say that a trial court has a mandatory duty to appoint a licensed interpreter whenever an interpreter is requested but that the trial court has the discretion to appoint whomever it chooses if the court decides *sua sponte* to appoint an interpreter. *See Haley v. State*, 173 S.W.3d 510, 514 (Tex.Crim.App.2005) ("We look solely to the statute's plain language for its meaning unless its text is ambiguous or the application of its plain language would lead to an absurd result that the Legislature could not have possibly intended."). This is particularly true given the various rights at stake when a defendant or witness who does not understand the English language appears in court. *See Garcia I*, 149 S.W.3d at 140–45.

We decline to follow the decisions of the El Paso and Corpus Christi Courts that complaints regarding the qualifications of an interpreter must be preserved by trial objection because those decisions fail to account for the Court of Criminal Appeals' decision in *Garcia I* and the application of section 57.002 to criminal proceedings.

■ Therefore, we hold that a trial court has an independent duty to appoint a licensed interpreter if the court is made aware that a defendant or witness does not understand the English language, unless the defendant expressly waives the right to a licensed interpreter. *Id.* at 144–45; Op. Tex. Att'y Gen. No. JC–0584, at 11; *see also* Tex.Code Crim. Proc. Ann. art. 38.30(a); Tex. Gov' t Code Ann. § 57.002(a), (b).

■ Here, the prosecutor made the court aware that Sosa did not understand English. Ridge did not expressly waive his right to a licensed interpreter. However, there is nothing in the record to support Ridge's contention that the person who interpreted Sosa's testimony was not licensed.

■ Ridge argues that he should prevail because "[t]here is no evidence in the record supporting the conclusion that the interpreter who translated for Carlos Sosa at trial was a 'licensed interpreter.'" Appellant's Brief at 5. Nevertheless, we will not find error from a silent record. To do so would be to find error on the basis of speculation, which we cannot do. *Cf. Rayme v. State,* 178 S.W.3d 21, 29 (Tex.

App.-Houston [1st Dist.] 2005, pet. ref'd) (ineffective assistance claim cannot be based on speculation); *Jones v. State,* 170 S.W.3d 772, 775 (Tex.App.-Waco 2005, pet. ref'd) (same).

■ A presumption of regularity attaches to the proceedings in the trial court and to the court's judgment. *See Light v. State,* 15 S.W.3d 104, 107 (Tex.Crim.App. 2000); *Downs v. State,* 137 S.W.3d 837, 840 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd); *Cochrane v. State,* 66 S.W.3d 415, 417 (Tex.App.-Tyler 2001, no pet.). An appellant bears the burden of overcoming this presumption.[11] *Marras v. State,* 741 S.W.2d 395, 407 (Tex.Crim.App.1987); Downs, 137 S.W.3d at 840; *Cochrane,* 66 S.W.3d at 417. Here, Ridge has failed to sustain his burden of overcoming the presumption of regularity.

Accordingly, we overrule Ridge's first point.

### Right of Confrontation

Ridge contends in his second and third points respectively that the court's failure to appoint a licensed interpreter violated his right of confrontation under the Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution. However, because Ridge has not established that the court failed to appoint a licensed interpreter, Ridge necessarily cannot establish that such failure violated his right of confrontation under either constitution. Thus, we overrule his second and third points.[12]

11. In this instance, the presumption of regularity could be overcome by the presentation of evidence regarding the interpreter's licensure status in a hearing on a motion for new trial. However, the better practice would be for the trial court to establish the interpreter's licensure status when the interpreter is sworn. Here, the record does not even reflect that the interpreter was sworn.

12. Ridge's second and third points could also be overruled because of his failure to object. *See Paredes v. State,* 129 S.W.3d 530, 535 (Tex.Crim.App.2004); *Steels v. State,* 170 S.W.3d 765, 771 (Tex.App.-Waco 2005, no pet.); *Oveal v. State,* 164 S.W.3d 735, 739 n. 2 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

### Denial of Counsel

■ Ridge contends in his fourth point that he was denied his right to counsel during the 30–day period after sentencing. Thus, Ridge argues he did not have counsel to assist him in deciding whether to file a motion for new trial.

The court imposed sentence on May 4, 2005. Ridge mailed a letter to the trial court on May 24 advising: (1) he wanted to appeal; (2) he wanted trial counsel to withdraw and other counsel appointed for appeal; and (3) he intended to raise "blatant acts of ineffective assistance of counsel among numerous acts that my appeal will cover." Upon receipt of Ridge's letter, the trial court appointed appellate counsel on June 3.

■ When a motion for new trial is not filed, there exists a rebuttable presumption that the defendant was informed by counsel of the right to file a motion for new trial, the merits of filing a motion for new trial were discussed, and the defendant rejected this course of action. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim.App.1998); *Hudson v. State*, 128 S.W.3d 367, 381 (Tex.App.-Texarkana 2004, no pet.); *Kane v. State*, 80 S.W.3d 693, 695 (Tex.App.-Fort Worth 2002, pet. ref'd); *accord Smith v. State*, 17 S.W.3d 660, 662–63 (Tex.Crim.App.2000).

The facts in Ridge's case are very similar to the facts in *Smith*. *Cf. Smith*, 17 S.W.3d at 662–63. Ridge's *pro se* notice of appeal and his stated intent to pursue ineffective assistance of counsel claims on appeal are not sufficient to rebut the presumption that his trial counsel provided effective assistance during the 30 days after sentencing. *See id.* Accordingly, we overrule Ridge's fourth point.

We affirm the judgment.

TOM GRAY Chief Justice, concurring.

Ridge appeals his convictions for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2003). We should affirm for different reasons than those in the majority's analysis. Because the Court does not do so, I concur in the judgment but not the opinion of the Court.

In Ridge's first three issues, he contends that the interpreter appointed by the trial court to interpret the testimony of one Spanish-speaking witness was not licensed in accordance with the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 57.001(5), 57.002(a)-(b) (Vernon Supp. 2006); Act of May 28, 2001, 77th Leg., R.S., ch. 1139, § 1, sec. 57.002(c), 2001 Tex. Gen. Laws 2537, 2538 (amended 2005) (current version at TEX. GOV'T CODE ANN. § 57.002(c) (Vernon Supp.2006)); TEX. GOV'T CODE ANN. §§ 57.041–57.051 (Vernon 2005). In Ridge's first issue, he contends that the Government Code requires the appointment of licensed interpreters. *See* TEX. GOV'T CODE ANN. § 57.002(a)-(b). In his second and third issues, he contends that the confrontation clauses of the United States and Texas Constitutions require the appointment of licensed interpreters. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

"As a prerequisite to presenting a complaint for appellate review, the record must show that ... the complaint was made to the trial court by a timely request, objection, or motion...." TEX.R.APP. P. 33.1(a). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only ... all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Neal v. State*, 150 S.W.3d 169, 175 (Tex.Crim.App.2004) (quoting *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.Crim.App.2004)).

[W]hen a trial judge is aware that the defendant has a problem understanding the English language, the defendant's right to have an interpreter translate the trial proceedings into a language which the defendant understands is a category-two *Marin* right. In these circumstances, the judge has an independent duty to implement this right in the absence of a knowing and voluntary waiver by the defendant.

*Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim.App.2004); *see Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App.1993). However, "a trial court is under no duty to question the interpreter to determine her qualifications; instead if a question regarding her qualifications arose, the Appellant should have objected and made a record." *Escamilla v. State*, No. 08–03–00193–CR, 2005 WL 1303303, at *7, 2005 Tex.App. LEXIS 4193, at *19 (Tex.App.-El Paso May 31, 2005, no pet.); *accord Montoya v. State*, 811 S.W.2d 671, 673 (Tex.App.-Corpus Christi 1991, no pet.); *Castillo v. State*, 807 S.W.2d 8, 9 (Tex.App.-Corpus Christi 1991, pet. ref'd). An appellant forfeits a complaint concerning the qualification of an interpreter not presented to the trial court. *Mendoza v. State*, No. 13–03–755–CR, 2005 WL 2476211, at *5, 2005 Tex.App. LEXIS 8247, at *18 (Tex.App.-Corpus Christi Oct.6, 2005, no pet.) (mem. op.); *accord Montoya* at 673; *Castillo* at 9.

Ridge did not object to the qualifications of the interpreter. We should overrule Ridge's first, second, and third issues on that basis.[1]

In Ridge's fourth issue, he contends that he was denied the effective assistance of counsel during the period for filing a motion for new trial.[2] *See* U.S. CONST.

---

1. Moreover, the Government Code does not mandate the appointment of a licensed interpreter. The Government Code provides:

   (a) A court shall appoint . . . a licensed court interpreter if a motion for the appointment of an interpreter is filed by a party or requested by a witness in a civil or criminal proceeding in the court.

   (b) A court may, on its own motion, appoint . . . a licensed court interpreter.

   TEX. GOV'T CODE ANN. § 57.002(a)-(b). At least in the absence of a party's motion or a request for an interpreter, Section 57.002 does not mandate the appointment of a licensed interpreter. *See id.* § 57.002(b). "The interpreter is not required to be an 'official' or 'certified' interpreter under the Code, but only to have sufficient skill in translating and to be familiar with the use of slang." *Menjivar v. State*, No. 08–02–00143–CR, 2003 WL 361272, at *1, 2003 Tex.App. LEXIS 1553, at *2–*3 (Tex.App.-San Antonio Feb. 20, 2003, no pet.) (mem.op.) (citing Act of May 28, 2001, 77th Leg., R.S., ch. 1139, § 1, sec. 57.002(a)-(c), 2001 Tex. Gen. Laws at 2538 (amended 2005); *id.* sec. 57.021 (amended 2005) (current version at TEX. GOV'T CODE ANN. § 57.021 (Vernon Supp.2006)); Act of May 21, 1991, 72d Leg., R.S., ch. 700, § 1, 1991 Tex. Gen. Laws 2505, 2505 (amended 2005) (current version at TEX.CODE CRIM. PROC. ANN. art. 38.30(a) (Vernon Supp.2006))); *accord Mendiola v. State*, 924 S.W.2d 157, 161 (Tex. App.-Corpus Christi 1995, pet. ref'd); *see Hernandez v. State*, No. 05–03–00107–CR, 2003 WL 22017228, at *5–6, 2003 Tex.App. LEXIS 7322, at *14–*17 (Tex.App.-Dallas Aug.27, 2003, no pet.) (not designated for publication). To that extent, Section 57.002 is thus in accord with Texas Code of Criminal Procedure Article 38.30. *See* TEX.CODE CRIM. PROC. ANN. art. 38.30(a). "The question of an interpreter's competency and qualifications is committed to the discretion of the trial court and absent an abuse of this discretion, decisions on this subject will not be disturbed on appeal." *Castaneda v. State*, No. 13–02–146–CR, 2004 WL 2632951, at *2, 2004 Tex.App. LEXIS 9773, at *4 (Tex.App.-Corpus Christi Nov. 4, 2004, pet. ref'd) (mem.op.); *see Montoya*, 811 S.W.2d at 673. Ridge did not file a motion for an interpreter. Moreover, the record does not show whether the interpreter was licensed. Accordingly, Ridge does not show that the trial court erred in appointing the interpreter.

2. I assume that the right to effective assistance applies to that period. *See Smith v. State*, 17 S.W.3d 660, 663 n. 3 (Tex.Crim.App. 2000).

amend. VI; *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Ineffective assistance under *Strickland[v.Washington* ] is deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Rompilla,* 125 S.Ct. at 2464 (quoting *Strickland* at 687, 688, 104 S.Ct. 2052). "[C]ounsel is 'strongly presumed' to make decisions in the exercise of professional judgment." *Yarborough v. Gentry,* 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (quoting *Strickland* at 690, 104 S.Ct. 2052). "A *Strickland* claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005) (quoting *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999)); *accord Salinas v. State,* 163 S.W.3d 734, 740 (Tex.Crim. App.2005). When "there [i]s no evidence in the record to show 'that trial counsel thought that his duties were completed with the end of trial, and had therefore abandoned the appellant'"; "[t]here is nothing in the record to suggest that the attorney did not discuss the merits of a motion for new trial with the appellant, which the appellant rejected"; and "[w]hen a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected." *Smith v. State,* 17 S.W.3d 660, 662 (Tex. Crim.App.2000) (quoting *Oldham v. State,* 977 S.W.2d 354, 362, 363 (Tex.Crim.App. 1998)). Likewise, an appellant's giving notice of appeal *pro se* is "an indication that she was aware of some of her appellate rights, 'and we presume she was adequately counseled unless the record affirmatively displays otherwise.'" *Id.* (quoting *Oldham* at 363).

Ridge points to his allegation of ineffective assistance in his *pro-se* notice of appeal. The record does not affirmatively show that trial counsel did not adequately represent Ridge during the period for filing a motion for new trial. Accordingly, Ridge does not establish that he did not receive the effective assistance of counsel. We should overrule Ridge's fourth issue on that basis.

We should, after overruling Ridge's issues on the above grounds, affirm.