# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00546-CV

**The City of Round Rock, Texas, and Round Rock Fire Chief Larry Hodge, Appellants**

**v.**

**Jaime Rodriguez and Round Rock Fire Fighters Association, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-09-000370, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

This employment dispute stems from appellant Round Rock Fire Chief Larry Hodge's denial of appellee fire fighter Jaime Rodriguez's request for representation by appellee the Round Rock Fire Fighters Association (the "Association") at an internal investigatory interview in which Rodriguez was being questioned concerning a complaint against him. Rodriguez and the Association filed suit against appellants, the City of Round Rock (the "City") and Hodge, alleging that denying Rodriguez's request for Association representation and continuing with the interview violated Rodriguez's rights under section 101.001 of the labor code.[1]

---

[1] Section 101.001 of the labor code provides:

All persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment.

Tex. Lab. Code Ann. § 101.001 (West 2006) ("section 101.001").

Facing cross motions for summary judgment, the district court found in favor of Rodriguez and the Association. The trial court thereafter declared that the City and Hodge violated Rodriguez's rights under section 101.001, permanently enjoined the City and Hodge from further violating section 101.001, and awarded contingent appellate attorney's fees. In eight issues, the City and Hodge appeal the trial court's judgment, challenging the trial court's subject matter jurisdiction, its interpretation of section 101.001, and its awards of injunctive relief and contingent appellate attorney's fees.

This appeal presents a question of statutory construction: whether section 101.001 of the labor code provides municipal employees represented by a labor organization with rights equivalent to so-called "Weingarten rights"—a private employee's right, upon request, to representation by a labor organization during an internal investigatory interview when the employee reasonably believes the interview may result in disciplinary action. *See National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975). For the reasons that follow, we hold that section 101.001 affords rights equivalent to so-called "Weingarten rights." Because we also conclude that the trial court had jurisdiction over appellees' causes of action and did not abuse its discretion in the relief awarded, we affirm the trial court's judgment.

## BACKGROUND

The relevant facts are undisputed. Rodriguez is a fire fighter employed by the Round Rock Fire Department, and Hodge is the Round Rock Fire Chief. Rodriguez is a member of the Association. The Association is an organization that represents fire fighters employed by the City. It is a local chapter of the International Association of Fire Fighters, AFL-CIO-CLC.

2

On July 29, 2008, Hodge called Rodriguez into a meeting concerning suspected disciplinary offenses by Rodriguez. The assistant fire chief and the battalion chief also were present at the meeting. At the outset of the meeting, Hodge advised Rodriguez that the purpose of the meeting was to conduct an "internal interview" of Rodriguez concerning a personnel complaint that Hodge had filed against him.[2] Hodge warned Rodriguez that he was required to answer questions put to him on "pain of discipline or discharge" and that his answers could be used as a basis for discipline but that they could not be "used against him" in a criminal prosecution. After receiving this warning, Rodriguez requested representation by the Association. Hodge denied the request, proceeded with the meeting, and questioned Rodriguez concerning the complaint.

In October 2008, Hodge again met with Rodriguez concerning the complaint. Hodge gave Rodriguez the choice of accepting a suspension of five shifts based upon the complaint and the waiver of appeal rights or face discharge. Rodriguez accepted the suspension of five shifts and waived his appeal rights.

Several months later, Rodriguez and the Association filed suit against the City and Hodge seeking declaratory and injunctive relief concerning Hodge's denial of Rodriguez's request for Association representation at the July 2008 meeting. They contended that the denial of an Association member's request for representation at an investigatory interview with management when the interview was continued without representation violated section 101.001. The City and

---

[2] Hodge alleged in the complaint that Rodriguez "took 2.5 hours sick leave on July 10, 2008, in order to take part in the hiring process for a Fire Fighter's position with the Austin, Texas, Fire Department." He further alleged that "to cover up for the true reason for reporting to duty 2.5 hours late on July 10, 2008," that Rodriguez made "false statements" and "falsified" his time sheet.

Hodge responded by filing a plea to the jurisdiction and original answer. Among their defenses, they asserted that the Association and Rodriguez lacked standing, the controversy was moot, the City had "sovereign and governmental immunity," Rodriguez failed to exhaust his administrative remedies, his claims were barred due to waiver and estoppel, and section 101.001 "does not apply to public employees."

The parties filed cross motions for summary judgment and responses. *See* Tex. R. Civ. P. 166a(c). The Association and Rodriguez asserted that (i) governmental immunity did not deprive the court of jurisdiction, (ii) the controversy was not moot, (iii) section 101.001 applied to public employees represented by a labor organization, and (iv) Rodriguez's rights under section 101.001 were violated when Hodge denied Rodriguez's request for representation and continued with the July 2008 investigatory interview. The Association and Rodriguez also sought attorney's fees and injunctive relief.

Appellees' summary judgment evidence included affidavits from Rodriguez, the Association's president, and the Association's attorney who averred concerning attorney's fees. Rodriguez averred concerning the complaint against him, the investigatory interview in July 2008, his request for representation at the interview, Hodge's denial of his request, and his subsequent choice to accept the suspension of five shifts. The written complaint and suspension memorandum were attached to Rodriguez's affidavit. Rodriguez signed the suspension memorandum, acknowledging and agreeing to the terms and conditions of his suspension including the waiver of his appeal rights.

4

The Association's president averred that the Association is a labor organization that specifically disavows the right to strike and that, on "multiple prior occasions," the Association had informed Hodge that its members had the right, upon request, to representation by the Association at investigatory interviews when they reasonably feared discipline as a result of the interview but that Hodge had "ignored these requests and ha[d] on multiple occasions concluded such investigatory interviews without affording fire fighters union representation as requested."

The president also averred concerning two scheduled investigatory interviews with management in April 2006 and Hodge's stated position to him from that time forward. The president appeared to represent two fire fighters during the interviews in April 2006 but was not allowed to attend the interviews. From that time forward, Hodge has not recognized the Association members' right to representation at investigatory interviews. In his affidavit, the president averred:

> At all times since 2006, the Fire Chief has refused to recognize a right to union representation upon request at investigatory interviews where the fire fighter fears discipline might result. Despite being advised that our attorney feels we have such a right under Texas statutes, the Fire Chief said based on advice from the City's attorney that no such right exists. He therefore declines to allow a union representative to attend investigatory interviews of fire fighters.

A letter from Hodge to the president was attached to the president's affidavit. In the letter, Hodge states, "[n]otwithstanding our opinions on representation during investigatory hearings," that the Association should provide access to an attorney for members preparing for "investigatory meetings."[3]

---

[3] Hodge sent the letter to the Association's president after Association members disclosed to others details of an investigation concerning alleged drug use. In the letter, Hodge recognized that

Attached to the response of the Association and Rodriguez was a further affidavit from the president concerning the purpose and role the Association plays in representing its members. The president averred:

> The Round Rock Fire Fighters Association exists for the purposes articulated in its bylaws, and for the purpose of promoting its members' employment rights and improving their working conditions. The Round Rock Local . . . attempts to provide representation for its members in all manner of hearings in which their employment interests are implicated, including grievances and matters affecting discipline. One of the benefits of Association membership is representation by trained union representatives in such meetings.

In their motion for summary judgment, the City and Hodge contended that the trial court lacked subject matter jurisdiction based upon lack of standing, mootness, waiver, estoppel, and governmental immunity. They further contended that the Association did not have so-called "Weingarten rights" because the City is a public employer. They also sought attorney's fees. Their summary judgment evidence included affidavits from Hodge, their attorney who averred to attorney's fees, and responses to discovery by the Association and Rodriguez.

---

employees subject to investigatory interviews need assistance:

> I am writing to urge the Union to establish a procedure providing your members' access to legal counsel to prepare for investigatory meetings. . . . The need for a legal access procedure became clear during recent investigatory meetings. . . . Notwithstanding our opinion on representation during investigatory hearings, I believe that it is in the best interest of your members to come to the Union and say: "I need to speak to an attorney about an investigatory meeting I am required to attend. I have been ordered not to discuss the investigation with anyone other than my attorney" and access to an attorney would be provided without further discussion.

Hodge averred concerning the complaint he filed against Rodriguez and his interview of Rodriguez in July 2008. He stated: "Plaintiff Rodriguez asserted that he had a right to have someone from the Association present during the investigatory interview. Based on legal advice and my familiarity with municipal civil service law, I denied his request." Hodge also averred concerning the resulting agreement with Rodriguez of a suspension of five shifts and the interviews in 2006 in which the Association's president "asserted each member's entitlement to union representation during each interview." Hodge further averred that "no other Round Rock fire fighter had asserted any entitlement to union representation during administrative investigations." A copy of the Association's constitution and by-laws was attached to his affidavit.

Following a hearing, the trial court granted the summary judgment motion of the Association and Rodriguez. The trial court thereafter entered final judgment, declaring that the City and Hodge had violated section 101.001, permanently enjoining the City and Hodge from further violations, and awarding appellate attorney's fees in the event of an unsuccessful appeal. The trial court declared that the City and Hodge violated section 101.001 "by denying Plaintiff Rodriguez, upon request, the right to representation by Plaintiff Association at the July 29, 2008 investigatory interview conducted by Defendants for the purpose of interrogating Rodriguez about a personnel complaint filed by Defendant Hodge." The trial court permanently enjoined the City and Hodge from violating section 101.001 "by denying Plaintiff Rodriguez, and Plaintiff Association's members, the right, upon request, to representation by Plaintiff Association at investigatory interviews they reasonably believe might result in discipline." This appeal followed.

7

**ANALYSIS**

In eight issues, the City and Hodge challenge the trial court's subject matter jurisdiction over the causes of action brought by the Association and Rodriguez, the trial court's interpretation of section 101.001 and grant of summary judgment in favor of the Association and Rodriguez, and the awards of injunctive relief and contingent appellate attorney's fees. We begin by addressing the jurisdictional issues.

***Did the trial court have subject matter jurisdiction over appellees' causes of action?***

In their third, fourth, fifth, and sixth issues, the City and Hodge urge that the trial court lacked subject matter jurisdiction over the causes of action brought by the Association and Rodriguez. They contend that (i) appellees do not have standing to assert their claims because their claims are moot, they suffered no injury in fact, and there is no causal connection between Hodge's actions and their "harm," (ii) the Association does not have associational standing, and (iii) Rodriguez failed to exhaust his administrative remedies.[4]

"Subject matter jurisdiction is essential to the authority of a court to decide a case," and a plaintiff's standing to bring his causes of action "is implicit in the concept of subject matter jurisdiction." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-45 (Tex. 1993). "The general test for standing in Texas requires that there '(a) shall be a real controversy between

---

[4] Although they contended to the trial court that Rodriguez's claims were barred by waiver and estoppel and that governmental immunity and sovereign immunity deprived the trial court of jurisdiction, the City and Hodge do not assert these grounds on appeal. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369-70 (Tex. 2009) (discussion of sovereign and governmental immunity); *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (discussion of doctrines of waiver and estoppel).

the parties, which (b) will be actually determined by the judicial declaration sought.'" *Id*. at 446 (quoting *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (1955)). Whether the district court had subject matter jurisdiction over appellees' causes of action presents a question of law that we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

### *A)* *Are the claims of the Association and Rodriguez moot?*

Given Rodriguez's acceptance of the five-shift suspension and agreement to waive appeal rights, the City and Hodge contend that appellees do not have standing and their claims are moot because there is no "live controversy" between the parties. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *Id.*

By his signature in October 2008 on the interoffice memorandum, Rodriguez acknowledged and agreed to the terms and conditions of the five-shift suspension, including waiving his appeal rights:

> By my signature above, I acknowledge and agree to the above terms and conditions of my temporary suspension of five (5) shifts, including but not limited to my waiver of all my appeal rights, as set out in Chapter 143 of the Texas [Local] Government Code, to either the Civil Service Commission or a third party hearing examiner, or to any court, as well as any appeal or grievance rights I may have under the City's Local Civil Services Rules and/or applicable Fire Department and City of Round Rock policies and procedures.

Because Rodriguez accepted the suspension and waived appeal rights, the City and Hodge urge that there is no longer a controversy between the parties concerning Rodriguez. As to other Association members, Hodge averred that other than Rodriguez's request and the two requests in 2006, "no other

9

Round Rock fire fighter has asserted any entitlement to union representation during administrative investigations."

In response, the Association and Rodriguez argue that, although the denial of Rodriguez's request to have representation at the investigatory interview has already occurred and he did not appeal the suspension that resulted from the complaint that was the subject of the July 2008 interview, the trial court had jurisdiction under an exception to mootness, the "capable of repetition yet evading review" doctrine. *See Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999); *Lakey v. Taylor*, 278 S.W.3d 6, 12-13 (Tex. App.—Austin 2008, no pet.). "This exception applies to claims where (1) the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot and (2) there is a reasonable expectation that the same action will occur again if the issue is not considered." *Blum*, 997 S.W.2d at 264; *Lakey*, 278 S.W.3d at 12-13.

The challenged act here—the denial of a request for representation at an investigatory interview that may result in the imposition of discipline—is an act of short duration that precludes the employee from obtaining review before the issue becomes moot. The representation issue becomes moot as soon as the investigatory meeting goes forward with or without a representative.[5]

---

[5] The dissent takes the position that the representative issue only "evaded review" because Rodriguez supposedly waived his appellate rights, as he could have presented his complaint that he was not allowed a representative during an appeal from his initial disciplinary proceeding. We agree with the trial court's sound reasoning in its letter to the parties on this issue. The trial court explained:

> The challenged action is likely to repeat yet evade review. First, the challenged action is denial of a representative at an employer-employee meeting. The plaintiffs "cannot obtain review before the issue becomes moot," because it

10

There also is a reasonable expectation that the City and Hodge will deny requests for representation at investigatory interviews again if the issue is not considered here. *See Blum*, 997 S.W.2d at 264; *Lakey*, 278 S.W.3d at 12-13. It was undisputed that Hodge denied the requests for representation at investigatory interviews in 2006 and July 2008 and conveyed the City's "opinion" to the Association that any Association members' requests would be denied. The City and Hodge further continue to assert that Association members have no right to representation during investigatory interviews. *See also Lubbock Prof'l Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (complaint concerning denial of union representative at a grievance hearing not mooted by grievance being fully heard). We conclude that the "capable of repetition yet evading review" exception, therefore, is applicable here.[6]

becomes moot as soon as the meeting goes forward, with or without a representative. What the employee says in the absence of representation cannot be put back in the bottle. Second, the Round Rock Fire Department, like most employers, is entitled to insist that its employees participate in an investigatory or disciplinary meeting whenever it chooses to call one, without prior notice. An employee cannot insist on a delay in the meeting in order to seek even emergency *ex parte* relief. Third, even if there were time for a court to act before the meeting, were the court to issue temporary relief preventing the meeting from going forward without a representative, the employer could choose to go forward in that instance, and in any other instance litigated, *with* a representative, repeatedly mooting each case. The only means of assuring a preservation of its jurisdiction would be for the court to preclude the employer-employee meeting from going forward until the matter could be "fully litigated." *See Blum v. Lanier*. Particularly with regard to employment in public safety, precluding resolution of disciplinary matter[s] for that length of time is an unacceptable option. An allegation of a denial of Weingarten rights should be divorced from the particular disciplinary matter, which should go forward, and should be addressed by a separate request for prospective relief, as plaintiffs have done here.

[6] We find appellants' reliance on *Williams v. Lara*, 52 S.W.3d 171 (Tex. 2001), misplaced. In that case, the supreme court found that the "capable of repetition" element was not met by two former inmates that sought declaratory and injunctive relief from the establishment of a Christian

*B)      Did the Association and Rodriguez suffer an injury in fact?*

The City and Hodge also contend that Rodriguez and the Association lacked standing to bring their claims because any alleged injury is speculative, Rodriguez and the Association have suffered no "injury in fact," there is no causal connection between their actions and any alleged "harm," and "[n]o individual fire fighter has an entitlement or a 'legally protected interest' in dictating how the Department conducts its internal investigations or who may be present during those interviews. Certainly, there exists no statutory language that grants municipal fire fighters this 'right.'"

To have standing, a party must suffer an injury that is a result of the defendant's actions and will be remedied by the court's action. *See Texas Ass'n of Bus*., 852 S.W.2d at 444-45. In the context of standing under Article III of the United States Constitution, the Supreme Court defines "injury in fact" as "an invasion of a legally protected interest which is . . . concrete and particularized" and "'actual or imminent.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *see also* U.S. Const. art. III; *Walker v. City of Georgetown*, 86 S.W.3d 249, 253 (Tex. App.—Austin 2002, pet. denied) (discussion of standing and "injury in fact").

Although the City and Hodge assert that no fire fighter has a "'legally protected interest' . . . in dictating . . . who may be present during those [investigatory] interviews" and that

---

education unit within a jail. *Id*. at 184-85. Given their release from the jail and their duty to avoid recidivism, the court concluded that there was no reasonable expectation that they would be again subject to the same allegedly unconstitutional operations within the jail. *Id*. In contrast, avoidance of disciplinary offenses by Association members does not preclude the City and Hodge from subjecting Association members to investigatory interviews without representation.

there "exists no statutory language that grants municipal fire fighters this 'right,'" that is the precise dispute between the parties—whether section 101.001 provides a right of representation at investigatory interviews. The Association and Rodriguez have alleged harm caused by appellants' actions—the denial of Association members' rights, including the denial of Rodriguez's right, to representation upon request at investigatory interviews and the Association's right to represent its members at investigatory interviews upon a member's request. Their harm is not speculative and may be remedied by injunctive relief. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444-45. We conclude that the Association and Rodriguez satisfy the injury-in-fact component of standing to bring their causes of action concerning the alleged violations of statutory rights under section 101.001. *See id.*; *Walker*, 86 S.W.3d at 253.

### C) Does the Association have associational standing?

The City and Hodge further contend that the Association lacks associational standing. "[A]n association has standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Texas Ass'n of Bus.*, 852 S.W.2d at 447 (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

Given our conclusion that Rodriguez has standing to sue in his own right, the Association satisfies the first element of associational standing. As to the second element, representing members at investigatory interviews is germane to the Association's purposes. The Association's constitution and by-laws provide that its objectives include to "promote a high level

13

of safety and fairness," and "to elevate and improve the morale, intellectual, social and economic conditions of its members." The Association's president also averred that one of the Association's purposes is to "provide representation for its members in all manner of hearings in which their employment interests are implicated, including . . . matters affecting discipline." As to the final element, the determination of whether or not section 101.001 provides the Association's members the right to representation—a question of statutory construction—does not require the participation of individual members. We conclude that the Association has associational standing. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518-19 (Tex. 1995) (union had standing to seek declaratory relief regarding facial validity of provisions of Texas workers' compensation act).

### D)      *Did Rodriguez fail to exhaust his administrative remedies?*

The City and Hodge further contend that the trial court did not have subject matter jurisdiction because Rodriguez failed to exhaust his administrative remedies. The undisputed evidence was that Rodriguez did not request a representative at the October 2008 meeting in which he agreed to the five-shift suspension and that he waived his appeal rights and did not file an appeal with a civil service commission.

The Association and Rodriguez agree that chapter 143 of the local government code provides the exclusive method for fire fighters to appeal disciplinary suspensions. *See* Tex. Loc. Gov't Code Ann. §§ 143.010, .053, .057 (West 2008); *City of Waco v. Bittle*, 167 S.W.3d 20, 28 (Tex. App.—Waco 2005, pet. denied). But Texas courts recognize the limited nature of a civil service commission's jurisdiction. *Bittle*, 167 S.W.3d at 29 (string citation to cases recognizing limited nature of civil service commission's jurisdiction). The issue in an appeal of disciplinary

14

suspension pursuant to section 143.053 is the "propriety of a disciplinary suspension or the length of the suspension." *Id*. at 30.

Here Rodriguez does not challenge the propriety or length of his suspension. He does not claim that the suspension was due to the assertion of his right to representation at the investigatory meeting. He also does not contend that he was entitled to representation at the October 2008 meeting with Hodge because it was not an investigatory interview. His complaint against the City and Hodge is confined to the denial of his request for Association representation during the July 2008 investigatory interview. His claim then is distinct from claims that would have been available to him had he appealed his suspension pursuant to chapter 143 of the local government code. *See id*. Because Rodriguez's claim was not within a civil service commission's jurisdiction pursuant to chapter 143, Rodriguez did not fail to exhaust administrative remedies before filing this suit. *See id*. (fire fighter properly sought relief in courts without seeking further administrative relief when municipality failed to restore compensation and benefits as a result of an improper suspension because chapter 143 did not authorize the civil service commission to determine these issues).

We conclude that the trial court had subject matter jurisdiction over appellees' causes of action and overrule appellants' third, fourth, fifth, and sixth issues. We turn to appellants' issues challenging the merits of the trial court's judgment.

***Does section 101.001 afford a right of representation at investigatory interviews equivalent to so-called "Weingarten rights"?***

In their first and second issues, the City and Hodge challenge the trial court's summary judgment ruling interpreting section 101.001 and its corollary declaration that the City and Hodge violated section 101.001 by denying Rodriguez's request for Association representation at the July 2008 interview. The City and Hodge contend that section 101.001 does not apply to municipal workers in a non-collective bargaining environment and that, even if it did apply, that section 101.001 does not provide the same rights as so-called "Weingarten rights." *See Weingarten*, 420 U.S. at 260.

### A) Standard of Review

We review the trial court's decision to grant summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (movant must conclusively prove all "essential elements of his cause of action or defense as a matter of law"). In deciding whether there is a disputed material fact issue precluding summary judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

We also consider questions of statutory construction *de novo*. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). When construing a statute, our primary goal is to determine and give effect to the legislature's intent. *Id.*; *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). To determine legislative intent, we look to the statute as a whole, as opposed to isolated provisions. *City of San Antonio*, 111 S.W.3d at 25 (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)). We begin with the plain language of the statute at issue and apply its common meaning. *Id.*; *see also In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001) (starting point for construing statute is the language of the statute itself). Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language unless that construction would lead to an absurd result. *See City of Rockwell v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (statutory text construed according to plain and common meaning unless contrary intention is apparent from context or unless such a construction leads to absurd result).

Declaratory judgments are reviewed under the same standards as other judgments or decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2008); *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). We must uphold the judgment of the trial court if it can be sustained upon any legal theory supported by the evidence. *See Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 149 (Tex. App.—Austin 2003, pet. filed); *Bell v. Katy Indep. Sch. Dist.*, 994 S.W.2d 862, 864 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Oak Hills Props. v. Saga Rests., Inc.*, 940 S.W.2d 243, 245 (Tex. App.—San Antonio 1997, no writ).

*B)*     *"Weingarten Rights"*

In *National Labor Relations Board v. J. Weingarten, Inc.*, the United States Supreme Court held that an employee covered by the National Labor Relations Act (NLRA) who reasonably fears discipline may result from an investigatory interview has a right, upon request, to union representation at that interview.  420 U.S. at 260.[7]  The Supreme Court upheld the Board's interpretation of section 7 of the NLRA, concluding that the right to representation at investigatory interviews falls within the "literal wording of § 7 that '[employees] shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.'"  *Id*.  (ellipses in original) (quoting 29 U.S.C.A. §  157 (1998) ("section 7")).[8]

Focusing on the meaning of the critical phrase "mutual aid and protection," the Supreme Court explained,

> This is true even though the employee alone may have an immediate stake in the outcome; he seeks "aid or protection" against a perceived threat to his employment security.  The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the

---

[7] The parties agree that the NLRA does not apply to public employees, such as the fire fighters here.  *See* 29 U.S.C.A. § 152 (1998).

[8] The text of section 7 of the NLRA provides in full:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

*Id*. § 157 (1998) ("section 7").

> entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. . . . The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview.

*Id*. at 260-61. The right of union representation in the context of an investigatory interview "effectuates the most fundamental purposes of the [NLRA]," including "'the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of . . . mutual aid and protection'" and the elimination of "'the inequality of bargaining power between employees . . . and employers.'" *Id*. at 260-62 (ellipses in original) (quoting 29 U.S.C.A. § 151 (1998)). The Supreme Court further explained:

> Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the Act was designed to eliminate, and bars recourse to the safeguards the Act provided "to redress the perceived imbalance of economic power between labor and management."

*Id*. at 262 (citation omitted).

The Supreme Court also defined the parameters of this right of representation. The right arises only when the employee requests representation at an investigatory interview and "is limited to situations where the employee reasonably believes the investigation will result in disciplinary action." *Id*. at 257. An objective standard applies to the determination of an employee's reasonable belief. *Id*. at 257-58. Further, upon an employee's request for a representative, the

19

employer may forego the interview and, in that event, would be free to continue its investigation without interviewing the employee:

> [E]xercise of the right may not interfere with legitimate employer prerogatives. The employer has no obligation to justify his refusal to allow union representation, and despite refusal, the employer is free to carry on his inquiry without interviewing the employee, and thus leave to the employee the choice between having an interview unaccompanied by his representative, or having no interview and forgoing any benefits that might be derived from one.

*Id*. at 258.[9]  Moreover, the employer has no duty to bargain with a union representative who is permitted to attend an investigatory interview. *Id*. at 259-60.  The representative is there to assist the employee.  While the representative may attempt to clarify the facts or suggest other employees who may have knowledge of them, the employer is "free to insist" that it is "only interested, at that time, in hearing the employee's own account of the matter under investigation." *Id*. at 260.

With this background, we turn to the issue at hand—whether section 101.001 provides equivalent rights to public employees such as the Association members here.

### C)  Scope of Section 101.001

The City and Hodge argue that section 101.001 does not apply to public employees and that, even if it does, section 7 is not similar "textually" to section 101.001 so as to support

---

[9] *But see* Tex. Gov't Code Ann § 614.023 (West Supp. 2009).  Section 614.023 of the Texas Government Code prohibits disciplinary action against a fire fighter employed by a political subdivision of this state without the fire fighter first receiving a copy of a signed complaint and further prohibits the fire fighter's indefinite suspension or termination based upon the subject matter of the complaint unless "the complaint is investigated" and "there is evidence to prove the allegation of misconduct." *See id*.

interpreting section 101.001 to provide rights equivalent to the rights recognized in *Weingarten*.

Further, the City and Hodge contend that, even if the language of section 101.001 was identical to

section 7, the right of representation would not be available here because the Association is not a

"designated collective bargaining representative." We address each of appellants' arguments.

### 1) Does section 101.001 apply to public employees?

The City and Hodge urge that the legislature did not intend for section 101.001 to

apply to public employees based upon the legislative history of the section and separate provisions

in the government code that are applicable only to public employees. *See* Tex. Gov't Code Ann.

§ 311.023(6) (West 2005) (whether or not statute ambiguous, court may consider legislative history).

To determine whether section 101.001 applies to municipal employees, we begin with

the section's plain language. *See City of San Antonio*, 111 S.W.3d at 25. Section 101.001 provides:

> All persons engaged in any kind of labor may associate and form trade unions and
> other organizations to protect themselves in their personal labor in their respective
> employment.

Tex. Lab. Code Ann. § 101.001. Section 101.001 expressly applies to "[a]ll persons engaged in any

kind of labor." *Id*. The legislature did not limit the class of persons but broadly modified "persons"

with the adjective "all," a word of ordinary meaning.[10] Section 101.001 contains no limiting

language of any kind.

---

[10] "All" commonly means "the whole amount or quantity of." Webster's Third New International Dictionary 54 (2002); *see also City of Austin v. Hyde Park Baptist Church*, 152 S.W.3d 162, 167 (Tex. App.—Austin 2004, no pet.) (interpreting use of "all" in municipal ordinance according to plain meaning of "all").

Appellants' proposed interpretation that section 101.001 affords rights only to private employees would significantly modify the section's plain language. *See City of San Antonio*, 111 S.W.3d at 25. "Courts must not give the words used by the Legislature an 'exaggerated, forced, or constrained meaning.'" *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 931 (Tex. 2010) (quoting *Cities of Austin, Dallas, Fort Worth, & Hereford v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002)). "Only when it is necessary to give effect to the clear legislative intent can we insert additional words or requirements into a statutory provision." *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981); *see City of Rockwall*, 246 S.W.3d at 629. Here the legislature did not distinguish between public and private employees. If the legislature had intended section 101.001 to apply only to private employees, it could have written such a restriction into the statute. *See City of Rockwall*, 246 S.W.3d at 629; *Cameron*, 618 S.W.2d at 540.

Interpreting section 101.001 to apply in both the public and private sector context conforms with other sections in chapter 101. For example, similar to the inclusive class of employees who have the right to associate and form trade unions under section 101.001, section 101.101 defines a "labor union" broadly:

> "Labor union" means an "incorporated or unincorporated association, group, union, lodge, local, branch, or subordinate organization of a union of working persons organized and existing to protect those persons and to improve their working conditions, wages, or employment relationships, but does not include an organization not commonly regarded as a labor union."

22

Tex. Lab. Code Ann. § 101.101; *see also id.* § 101.051 (same) (West 2006).  If the legislature intended chapter 101 not to apply in the public sector context, it could have defined a labor union more narrowly.  *See City of Rockwall*, 246 S.W.3d at 629; *Cameron*, 618 S.W.2d at 540.

As to the legislative history of section 101.001, the underlying legislation was first enacted in 1899 and became article 5152 of the revised civil statutes in 1947.[11]  Act of May 27, 1899, 26th Leg., H.B. No. 97, 11 Laws of Texas 262, 262; Tex. Rev. Civ. Stat. Ann. art. 5152 (current version at Tex. Lab. Code Ann. § 101.001).  In 1947, the legislature also enacted article 5154c of the revised civil statutes, which specifically addressed public employees in the context of labor organizations, prohibiting them from engaging in strikes or work stoppages but affording them the right to form and join a labor organization.  Tex. Rev. Civ. Stat. Ann. art. 5154c (current version at Tex. Gov't Code Ann. §§ 617.001-.005 (West 2004)); Act of April 29, 1947, 50th Leg., R.S., ch. 135, 1947 Tex. Gen. Laws 231, 231-32.[12]  Appellants argue that the legislature addressed the

---

[11]  Article 5152 was titled "Right to organize" and provided:

It shall be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trade unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments.

Tex. Rev. Civ. Stat. Ann. art. 5152 (current version at Tex. Lab. Code Ann. § 101.001).

[12]  Chapter 617 of the government code was enacted in 1993 as a non-substantive revision of article 5154c as part of the codification process.  *See* Tex. Gov't Code Ann. §§ 617.001-.005 (West 2004).  Chapter 617 is titled "Collective Bargaining and Strikes."  Consistent with article 5154c, chapter 617 prohibits collective bargaining and strikes by public employees, prohibits the denial of public employment because of an individual's membership or nonmembership in a labor organization, and makes clear that the chapter does not impair the right of public employees to present grievances either individually *or through a representative* that does not claim the right to strike.  *See id.* §§ 617.002-.005.

rights of private and public employees concerning labor organizations separately in the two articles.[13] The legislative history, however, is silent on any intent for article 5152 or section 101.001 to apply only to private employees. Further, the existence of a statute specifically addressing public employees in the context of labor organizations does not preclude section 101.001 from affording public employees protections that apply to "all persons" for "all labor."[14] *See* Tex. Lab. Code Ann. § 101.001 revisor's note.

To support their interpretation of section 101.001, the City and Hodge rely on *Congress of Industrial Organizations v. City of Dallas*, 198 S.W.2d 143 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.), and *McNatt v. Lawther*, 223 S.W. 503 (Tex. Civ. App.—Amarillo 1920, no writ).[15] Neither case, however, is instructive here. Both cases upheld city ordinances that subjected

---

[13] Section 101.001 also was enacted in 1993 as a non-substantive revision of article 5152 as part of the codification process. *See* Act of May 24, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1028.

[14] For example, section 617.001 of the government code defines "labor organization" in the public employment setting:

> In this chapter, "labor organization" means any organization in which employees participate and that exists in whole or in part to deal with one or more employers concerning grievances, labor disputes, wages, hours of employment, or working conditions.

Tex. Gov't Code Ann. § 617.001. This definition overlaps with the definition of "labor union" in the labor code. *See* Tex. Lab. Code Ann. §§ 101.051, .101 (West 2006).

[15] The City and Hodge also cite *San Antonio Fire Fighters' Local Union No. 84 v. Bell*, 223 S.W. 506, 508 (Tex. Civ. App.—San Antonio 1920, writ ref'd), but they concede that the court there expressly declined to decide whether public employees had the right "to associate themselves and form trade unions and other organizations for the purpose of protecting themselves together in their personal work, personal labor, and personal service, in their respective pursuits and employments."

city employees to discharge for becoming union members. *Congress of Indus. Org.*, 198 S.W.2d at 147-48; *McNatt*, 223 S.W. at 505. Both cases were decided before section 4 of article 5154c (now section 617.004) was enacted. Section 4 of article 5154c provides that "no person shall be denied public employment by reason of membership . . . in a labor organization." Tex. Rev. Civ. Stat. Ann. art. 5154c, § 4. Although article 5152 (now section 101.001) protected an employee's right to organize and join a union, it did not prevent an employer from discharging an employee for union membership. Article 5154c then made clear that a public employer could not discharge an employee for union membership. To the extent our sister court in *Congress of Industrial Organizations* held that article 5152 of the revised civil statutes (now section 101.001) did not apply to public employees, we find our sister court's analysis in a case refusing temporary injunctive relief unpersuasive to support interpreting section 101.001 in a manner that contradicts the plain language of the statute. *See City of Rockwall*, 246 S.W.3d at 629; *Congress of Indus. Org.*, 198 S.W.2d at 147-48.[16] There is no justification for departing from the plain text of a constitutional statute. And any such departure flows from a strained reading unsupported by relevant precedent. *See Lunsford v. City of Bryan*, 297 S.W.2d 115, 117 (Tex. 1957).

---

[16] *Compare Glen v. Texas State Employees Union*, No. 13,723 (Tex. App.—Austin 1982, no writ) (mem. op., not designated for publication). In that case, this Court interpreted article 5152 to apply in the public employment context and upheld a temporary injunction enjoining the superintendent and others of a state hospital from denying a union the "right to represent its members in patient-abuse investigations." *Id*. at 1, 8. Although we are not bound by this Court's opinion in *Glen*, the analysis is similar. This Court addressed whether article 5152 affords rights similar to Weingarten rights and concluded article 5152 "probably confers upon appellees the right to representation at patient-abuse interviews" at the hospital. *See id*. at 8.

The Texas Supreme Court's opinion in *Lunsford v. City of Bryan* guides our review. In that case, the court held that the City of Bryan's discharge of a fire fighter based upon his union membership violated section 4 of article 5154c and section 2 of article 5207a of the revised civil statutes. Tex. Rev. Civ. Stat. Ann. arts. 5154c, § 4; 5207a, § 2 (current version at Tex. Lab. Code Ann. § 101.052 (West 2006)). Broader than section 4 of article 5154c, section 2 of article 5207a provided that: "No person shall be denied employment on account of membership or nonmembership in a labor union." Interpreting the articles, the court held that the city violated both statutes and did not distinguish between public and private employment. 297 S.W.2d at 117. The court looked to the purpose of the "right-to-work" statutes in holding that the city violated the statutes:

> The intent seems obvious to protect employees in the exercise of the right of free choice of joining or not joining a union. The purpose of the statute is to afford equal opportunity to work to both classes of employees.

*Id*. Consistent with the supreme court's analysis in *Lunsford*, we conclude that the plain language of "all persons" in section 101.001 includes public employees.

> 2) *Does section 101.001 provide a right to representation at investigatory interviews?*

The City and Hodge next argue that, even if section 101.001 applies to public employees, it is not textually similar to section 7 of the NLRA so as to support an intent by the Texas legislature to provide equivalent rights to so-called "Weingarten rights" and that only the legislature should create these rights for public employees such as municipal fire fighters. The City and Hodge

26

argue that the legislature did not intend to "engraft federal private sector labor law onto Texas municipal employer/employee relationships when it codified section 101.001 in 1993" and it could not have done so in 1899, when the predecessor statute was enacted, because the federal law did not exist at that time.

A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Further, Texas courts examine federal labor law to interpret state labor provisions. *See, e.g.*, *Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984) ("conditions of work" interpreted with reference to federal interpretation of term as used in NLRA); *Lunsford*, 297 S.W.2d at 117 (state labor law interpreted by examining federal analysis of NLRA); *Dallas Indep. Sch. Dist. v. American Fed'n. of State, County and Mun. Employees, Local Union No. 1442*, 330 S.W.2d 702, 707 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.) (construing "representative" as used in state labor statute by referencing federal labor law).[17] At the time the legislature enacted

---

[17] In construing state statutes, it is well established that Texas courts may be guided by federal cases construing similar or counterpart federal statutes. *See Barr v. City of Sinton*, 295 S.W.3d 287, 296 n.42 (Tex. 2009) (string citation to cases in which court guided by federal cases construing a similar or counterpart federal statute to the state statute at issue); *see also Glen*, *supra*, at 6. In *Glen*, this Court examined the Supreme Court's opinion in *Weingarten* and analyzed article 5152 by comparing its language to section 7's language:

> Although, admittedly, the language of art. 5152 is not identical to that of [section 7 of] the National Labor Relations Act, the interests protected by the respective statutes are similar—the right to associate with other employees to protect themselves in their work. In fact, it would seem the language of the Texas "right-to-work" statute may be construed to allow <u>any</u> employee, whether member of the labor union or not, to have a representative appear with him at an investigatory hearing or interview.

*Id*. at 7 (emphasis in original).

27

section 101.001, the federal interpretation of the "literal wording" of section 7 and expressed parameters of the rights afforded under section 7 had been in existence for over twenty years, as well as case law interpreting articles 5154c and 5152, including this Court's opinion in *Glen*. We presume then that the Texas legislature was aware of the right to representation afforded under the "literal wording" of section 7 and enacted section 101.001 with reference to it. *See id*.

Comparing the wording in section 7 with section 101.001, section 101.001 expressly provides employees the right to "associate . . . to protect themselves in their personal labor in their respective employment." Tex. Lab. Code Ann. § 101.001. This language substantively mirrors the language in section 7 providing employees the right to "engage in other concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C.A. § 157. Although not identical, the language is substantially similar with both statutes protecting the same rights—employees' rights to join together to protect themselves in their employment.[18]

Interpreting section 101.001 to provide rights equivalent to so-called "Weingarten rights" conforms with the plain language of the titles of title 3, chapter 101, subchapter A, and section 101.001 of the labor code and the statute as a whole. *See City of San Antonio*, 111 S.W.3d at 25; Tex. Gov't Code Ann. § 311.023(7) (West 2005) (when construing a statute whether or not ambiguous on its face, courts may consider title). Title 3 of the labor code is entitled "Employer-Employee Relations," chapter 101 is titled "Labor Organizations," subchapter A is titled

---

[18] The plain language in former article 5152 further supports that the legislature intended to afford similar protections to employees as those provided under section 7. Article 5152 provided employees the right to "associate themselves together and form trade unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments." Tex. Rev. Civ. Stat. Ann. art. 5152.

28

"Rights of Working Persons," and section 101.001 is titled "Right to Organize." The legislature's chosen title for title 3 broadly identifies the subject area of the legislation—the relationship between employers and employees. Within that subject area, the focus of chapter 101 is on "labor organizations." Subchapter A of chapter 101 then addresses the rights of employees in the context of labor organizations, and section 101.001 of subchapter A specifically provides the right to organize and "associate" to "[a]ll persons" in the state "to protect themselves." *See* Tex. Lab. Code Ann. § 101.001.[19]

Interpreting section 101.001 to afford public employees rights equivalent to those rights recognized in *Weingarten* fosters the same stated policy grounds. *See Weingarten*, 420 U.S. at 262-64. Public employees, like their private counterparts, may be too fearful or inarticulate to relate the incident being investigated accurately when confronted by an employer investigation. *See id.* at 262-63. Deferring the right to representation until a later point in time may also make it more difficult for the employee to vindicate herself or himself and the value of later representation may be diminished just as in the private sector. *Id.* at 263-64. Moreover, allowing an employee to have a representative from a labor organization present may also assist the employer "by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident

---

[19] Interpreting section 101.001 to provide a right of representation is consistent with other provisions in chapter 101. For example, in subchapter C titled "Regulation of Labor Unions," section 101.103 provides that the subchapter is to be "liberally construed" to "protect the rights of working persons to work and to organize for their mutual benefit in connection with their work." *See* Tex. Lab. Code Ann. § 101.103 (West 2006). Affording all "working persons," whether they work in the private or public sector, the right to representation by their labor union at investigatory interviews is consistent with subchapter C's stated purpose of protecting the rights of working persons "to organize for their mutual benefit in connection with their work." *Id.*

occasioning the interview." *Id*. at 263. "[T]he representative may be able, through informal discussion and persuasion conducted at the threshold, to serve as the catalyst in the amicable resolution of disputes, and, in the union context, be able to discourage unjustified grievances." *DuPont v. NLRB*, 724 F.2d 1061, 1065 (3d Cir. 1983), *vacated*, 733 F.2d 296 (3rd Cir. 1984) (citing *Weingarten*, 420 U.S. at 262-63, 262 n.7).

We find the analysis in *Johnson v. Express One International, Inc.*, 944 F.2d 247, 251 (5th Cir. 1991), instructive. In that case, the Fifth Circuit compared the rights granted to employees under the Railway Labor Act (RLA) and section 7. The relevant provision of the RLA provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . ."

45 U.S.C.A. § 152 (2007). Comparing the two statutes, the Fifth Circuit declined to afford equivalent rights under the RLA to the rights afforded under section 7. 944 F.2d at 252. Crucial to the Fifth Circuit was the omission in the RLA of similar language to section 7's "concerted activities for the purpose of . . . mutual aid or protection." *Id*. at 251. The court reasoned that both statutes provided the right to establish a union but absent from the RLA was the additional right "to engage in other concerted activities." *Id*. at 251-52. In contrast to the RLA, section 101.001 provides both the right to organize and establish unions and also the right to associate to protect themselves in their employment. *See* Tex. Lab. Code Ann. § 101.001.

Consistent with the federal interpretation of section 7, we conclude that an equivalent right to representation at investigatory interviews falls within the "literal wording" of section 101.001. *See Weingarten*, 420 U.S. at 260; *see also City of Rockwall*, 246 S.W.3d at 629.

### 3) Does section 101.001 apply outside the context of collective bargaining settings?

The City and Hodge next argue that, even if section 101.001 provides a right to representation at investigatory interviews to public employees, the section does not apply here because the Association does not have collective bargaining rights. The plain language of section 101.001, however, is not limited to collective bargaining settings. The statute allows "[a]ll persons" to "associate and form . . . other organizations to protect themselves." *See* Tex. Lab. Code Ann. § 101.001. By including "and other organizations," the legislature's intent as expressed in the plain language was to allow representation by a broader category of organizations than trade unions with collective bargaining rights. *See City of Rockwall*, 246 S.W.3d at 629.

Further, in the public employment context, whether or not there is a collective-bargaining right is not how the legislature has divided up the right to representation. *See* Tex. Gov't Code Ann. §§ 617.002, .005 (collective bargaining by public employees prohibited but chapter "does not impair" existing right to representation to present grievances); *see also Sayre*, 681 S.W.2d at 28 (public employee had right to be represented by an attorney in grievance proceeding under article 5154c, section 6); *Corpus Christi Am. Fed'n of Teachers v. Corpus Christi Indep. Sch. Dist.*, 572 S.W.2d 663, 665 (Tex. 1978) (teacher had "an absolute right" under article 5154c, section 6 to be represented in a grievance matter by the president of the local union, which did not claim the right

31

to strike); *Lubbock Prof'l Firefighters*, 742 S.W.2d at 416 (although article 5154c prohibits collective bargaining, section 6 of article 5154c "makes clear . . . the legislature's intent that the prohibition should not be interpreted broadly to deny public employees their existing right to present grievances" through a representative); *Beverly v. City of Dallas*, 292 S.W.2d 172, 176 (Tex. Civ. App.—El Paso 1956, writ ref'd n.r.e.) (concluding that protection of representative concerning grievances in section 6 of article 5154c does not conflict with the prohibition of collective bargaining in sections 1 and 2; drawing a distinction between the former ("a unilateral proceeding resulting in no loss of sovereignty by the municipality") and the latter ("a bilateral procedure . . . binding the parties to an agreement")). That the Association does not have the right to engage in collective bargaining with the City then does not preclude section 101.001's application here.

Appellants rely on the NLRB's analysis in *IBM Corporation*, 341 N.L.R.B. 1288 (2004), to support their argument that section 101.001 only applies in collective bargaining settings. We find the NLRB's analysis, however, not inconsistent with our holding here. That case specifically addresses whether a non-union employee has Weingarten rights and makes no distinction between union employees with collective-bargaining rights versus union employees without collective bargaining rights. In *IBM Corporation*, the NLRB was concerned with the difference between a union representative and a co-worker chosen on an "ad hoc basis" in a workplace where no union was present. *Id*. at 1291-92. In that context, the NLRB held that an employer whose employees were not represented by a union did not violate its employees' rights by denying their requests to have a co-worker present during investigatory interviews. *Id*. at 1294. In contrast, Rodriguez is a member of the Association, a labor union, and Rodriguez did not request a co-worker

32

but a representative of the Association to be present. *See* Tex. Lab. Code Ann. § 101.101 (labor union defined); *see also* Tex. Gov't Code Ann. §§ 617.001 (labor organization defined), .005 (chapter 617 "does not impair the right of public employees to present grievances . . . through a representative that does not claim the right to strike").[20]

In *Weingarten*, the Supreme Court specifically held that the right to a representative is derived from the right to engage in concerted activity under section 7, as opposed to a union's right to act as a collective-bargaining representative, which is protected under section 9 of the NLRA. *See Weingarten*, 420 U.S. at 260; *see also* 29 U.S.C.A. §§ 157, 159 (1998). Consistent with the analysis and interpretation of section 7 in *Weingarten*, we conclude that the plain language of section 101.001 provides Association members rights equivalent to the rights afforded under section 7—the right to request representation by the Association at investigatory interviews when the employee reasonably fears disciplinary action—and that the trial court did not err in declaring that the City and Hodge violated Rodriguez's rights under section 101.001. We overrule appellants' first and second issues.

### *Injunctive Relief*

In their seventh issue, the City and Hodge contend that, because the trial court erred on the merits, the permanent injunction must be dissolved. The City does not otherwise challenge

---

[20] An employer's right to the presence of a union representative is not without limits. Our opinion should not be read to permit an employee to demand that a fellow participant in the incident giving rise to the investigation be permitted to act as his representative. In *IBM Corporation*, the NLRB warned against the dangers of allowing a "coconspirator" to act as an employee's representative, stating, "It can hardly be gainsaid that it is more difficult to arrive at the truth when employees involved in the same incident represent each other." 341 N.L.R.B. 1288, 1292 (2004).

the substance or scope of the injunctive relief awarded. The trial court permanently enjoined the City from violating section 101.001 "by denying Plaintiff Rodriguez, and Plaintiff Association's members, the right, upon request, to representation by Plaintiff Association at investigatory interviews they reasonably believe might result in discipline." We review the granting or denial of a permanent injunction for an abuse of discretion. *See Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Given the City's limited ground for challenging the award of injunctive relief and our conclusion that the trial court did not err in its interpretation and declaration of rights under section 101.001, we conclude that the trial court did not abuse its discretion by granting permanent injunctive relief. We overrule appellants' seventh issue.

### *Attorney's Fees*

In their eighth issue, the City and Hodge contend that the trial court erred by awarding contingent appellate attorney's fees when it denied fees for work done at the trial court level. Appellants urge that the trial court was improperly attempting to influence them from asserting their lawful right to appeal the trial court's decision. The trial court did not award any fees at the trial court level but awarded contingent appellate attorney's fees in the event of an unsuccessful appeal by the City and Hodge. The trial court awarded $9,750 in the event that appellants unsuccessfully appealed to this Court, and an additional amount of $9,750 in the event appellants unsuccessfully appeal to the Texas Supreme Court if the petition for review is refused or denied without oral argument or $14,625 if the petition is refused or denied after oral argument.

34

Section 37.009 of the uniform declaratory judgments act (the "Act") provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). We review the award of attorney's fees under the Act for abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998); *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985); *see Downer*, 701 S.W.2d at 241-42 (abuse of discretion standard of review). The City and Hodge do not contest the reasonableness or necessity of the fees, limiting their argument to whether the award of contingent appellate attorney's fees was "equitable and just."

Appellants, however, have failed to cite any authority, and we have found none, that precludes a trial court from finding that contingent appellate attorney's fees would be "equitable and just" when the trial court finds that the award of trial court attorney's fees would not be "equitable and just." On this record, we cannot conclude that the trial court abused its discretion by only awarding contingent appellate attorney's fees. *Herring*, 972 S.W.2d at 20-21. We overrule appellants' eighth issue.

**CONCLUSION**

We conclude that the trial court had jurisdiction over appellees' causes of action, that it did not err in its interpretation of section 101.001, and that it did not abuse its discretion in awarding injunctive relief and contingent appellate attorney's fees. We therefore affirm the trial court's judgment, declaring that the City and Hodge violated Rodriguez's rights under section 101.001, permanently enjoining them from further violations, and awarding contingent appellate attorney's fees.

35

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson
    Dissenting opinion by Justice Puryear

Affirmed

Filed:   July 21, 2010

36